Filed 1/5/17

CERTIFIED FOR PARTIAL PUBLICATION[*]

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| GABRIEL HERNANDEZ, | |
| Plaintiff and Respondent, | E063721 |
| v. | (Super.Ct.No. CIVDS1312548) |
| TOWN OF APPLE VALLEY, | OPINION |
| Defendant and Appellant; | |
| WALMART STORES, INC., | |
| Real Party in Interest and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge.

Affirmed in part; reversed in part.

Best, Best & Krieger, Piero C. Dallarda, Danielle G. Sakai and Thomas M.

O'Connell for Defendant and Appellant.

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts D and E.

Manatt, Phelps & Phillips and Keli N. Osaki for Real Party in Interest and Appellant.

Briggs Law Corporation, Cory J. Briggs and Anthony N. Kim for Plaintiff and Respondent.

Daniel P. Selmi; Shute, Mihaly & Weinberger, Rachel B. Hooper, Sara A. Clark and Allison A. Johnson for Center for Community Action and Environmental Justice as Amicus Curiae on behalf of Plaintiff and Respondent.

Defendant and appellant Town of Apple Valley (Town) and real party in interest and appellant Wal-mart Stores, Inc. (Walmart) appeal the grant of the motion for summary judgment and/or adjudication (Motion) in favor of plaintiff and respondent Gabriel Hernandez.  This case involves a measure passed by the Town's electorate on November 19, 2013, in a special election (Initiative) that amended the general plan to allow for a 30-acre commercial development, which would include a Walmart Supercenter.  Walmart provided a gift to Town to pay for the election and Town accepted the payment by adopting a memorandum of understanding (MOU) at a regular council meeting held on August 13, 2013.

Hernandez filed a first amended complaint against Town and Walmart alleging violations of the Ralph M. Brown Act, Government Code section 54950 et seq. (Brown Act) for actions taken at the Town's council meeting on August 13, 2013, and that the Initiative violated the California Constitution, article II, section 12 (article II, section 12). Specifically, Hernandez argued the agenda for the Town's council meeting failed to provide the proper notice of the actions to be taken at the meeting, e.g., that the Town

2

council would vote to send the Initiative to the voters and approving the MOU that accepted the gift from Walmart to pay for the special election. Further, Hernandez alleged that although Walmart was not specifically named in the Initiative, it was clear from the other ballot materials that Walmart was identified within the meaning of article II, section 12 rendering the Initiative unconstitutional. The trial court granted the Motion finding the MOU and Initiative were void and invalid. The trial court awarded Hernandez $5,241.96 in costs and $45,053.75 in attorney fees.

Town and Walmart raise the following issues on appeal:

1. The Motion failed to demonstrate that Town violated the Brown Act.

2. The Motion failed to demonstrate that the Initiative violated article II, section 12.

3. The trial court improperly awarded Hernandez his costs because his memorandum of costs was filed late and included items that were not recoverable.

4. The trial court should have denied or reduced Hernandez's request for attorney fees because he failed to meet his burden of establishing local market rates for attorneys in San Bernardino County.

The Motion was properly granted on the violation of the Brown Act, which invalidates the special election on the Initiative. Since it is likely that the matter will again be placed on the ballot or voted on by the Town council, we also find that the Initiative as written did not violate article II, section 12. The award of costs is reversed as the memorandum of costs was filed late without a showing by counsel that such late

3

filing was due to mistake of law, inadvertence, or surprise. The attorney fee award is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

A.    <u>STATEMENT OF FACTS</u>

The following facts are taken from the undisputed material facts agreed to by Hernandez, and Town and Walmart; and the additional disputed facts presented by Hernandez, and by Town and Walmart.

Hernandez was a resident of Apple Valley and was a registered voter. Town was a local agency and legislative body within the meaning of Government Code sections 54951 and 54952. Walmart was a private corporation. Item No. 16 on the Town council meeting agenda to be held on August 13, 2013, read "Wal-Mart Initiative Measure" and the recommendation for action was "Provide direction to staff." Hernandez alleged there was no further information on the agenda regarding this matter.

The Town adopted three resolutions at the meeting: Resolution No. 2013-33 was to call a special election on the Initiative to be held on November 19, 2013, and the Initiative would be titled Dale Evans Parkways Commercial Specific Plan (the Specific Plan); Resolution No. 2013-34 provided for filing rebuttal arguments for and against the Initiative; and Resolution No. 2013-35 for filing rebuttal arguments for and against the Initiative. Town also adopted the MOU that authorized accepting a gift from Walmart to pay for the special election. These resolutions and The Specific Plan were not on the agenda. The agenda did not provide a description of the Walmart Initiative Measure and the resolutions adopted did not mention the Walmart Initiative Measure in their text.

4

In 2011 there was an initiative measure circulated that the Town council referred to as the "Wal-mart Initiative Measure." The matter appeared on the agendas for meetings in March, April and October 2011 as the "Wal-mart Supercenter Ballot Initiative." When Hernandez viewed the agenda for the August 2013 meeting, he understood that it was to discuss the action to be taken on the 2011 ballot initiative, which had been declared null and void. Further, Hernandez believed the only action to be taken at the meeting was to give staff direction as to what to do next. If he had known about the actions to be taken at the meeting, he would have attended the meeting and submitted comments.

Hernandez was concerned that Walmart paid to circumvent the "normal administrative vetting process" by paying for the special election. He would have requested a report be prepared before the Town adopted the resolutions and called the special election so that the council and voters would be better informed.

On September 12, 2013, Hernandez sent a request, pursuant to the Brown Act, to Town to cure the Brown Act violation. On October 1, 2013, Town declined to cure the alleged violations of the Brown Act.

The ballot materials with the Initiative included language that "VOTING YES ON MEASURE D will approve an upgraded new Walmart store and other businesses at the corner of Dale Evans Parkway and Thunderbird Road." The ballot argument in favor of the Initiative included language that "Walmart proposed a new, upgraded store offering more affordable, fresh groceries and expanded retail choices for Apple Valley's

5

hardworking families." Prior to the vote, several articles appeared in the Victor Valley Daily Press that the Initiative was to bring a Walmart to Apple Valley.

Walmart donated $725,000 to Apple Valley Consumers for Choice. They were a proponent of the Initiative. The Initiative referred to the fee title holder. Walmart was the fee title holder. The Initiative also included language that the owner of the parcel would contact the fire district to verify current fire protection requirements. Also the owner and/or developer was responsible for all new fire hydrants. The Initiative measure defined "developer" as "any individual or other entity proposing any development within the Specific Plan area." The Initiative used language such as "developer is responsible for," "developer is responsible to ensure," "developer shall," "developer will be required to," and "developer must." Developer was responsible for any fees associated with environmental standards, permit applications, utilities, landscaping or any other unforeseen reasons.

The Initiative and the ballot materials stated that the general plan would be amended to add to the Town of Apple Valley Development Code the enactment of the Specific Plan in order to allow a proposed commercial development of approximately 30 acres near the Happy Trails Highway at the intersection of Dale Evans Parkway and Thunderbird Road.

Hernandez believed the Initiative for the Specific Plan was for the benefit of Walmart. He read in the Victor Valley Daily Press that Walmart asked Town for the ballot measure. He read the ballot argument in favor of the Initiative that stated a "yes" vote would approve a new upgraded Walmart store at the corner of Dale Evans Parkway

and Thunderbird Road. He believed the Specific Plan was for the benefit of Walmart so it could build its new store.

Town and Walmart disputed many of the above facts and insisted an agenda packet was available with the agenda, which included information as to the options the Town council had to pursue development, the text of resolutions that were adopted, a summary of the Initiative and the possibility of calling a special election. The Specific Plan was in the agenda packet that was part of the agenda. Further, the Walmart Initiative Measure was fully described in the agenda packet.

Walmart and Town contended that all of the information regarding the actions to be taken at the August meeting were in the agenda packet that was available online and in the clerk's office. They also disputed that Hernandez looked at the agenda prior to the meeting and that he would have attended the meeting. Town and Walmart noted that several other citizens were at the meeting and objected to the resolutions and other action taken by the Town council.

Town and Walmart objected to the ballot materials being relevant. They also disputed that Apple Valley Consumers for Choice was a major proponent of the Initiative.

Town and Walmart submitted additional facts. On May 14, 2013, Dennis Patrick Orr filed a notice of intent to circulate the Initiative to amend the Town's general plan in order to establish the Specific Plan. The Initiative would provide for a retail development, which would have multiple retailers. It received enough signatures to be considered by the Town council.

7

The agenda for the Town council meeting was posted on the Town's Web site, at the Town library and the Town clerk's office with the agenda packet being available. The agenda packet included information that the Town council could act at the meeting by submitting the Initiative to the voters in a special election. The special election would be held on its own and conducted by Town. At the meeting on August 13, 2013, 16 comment cards were received from the members of the public who were present to comment on agenda item No. 16. Of those cards, 14 objected to the Initiative. Further, eight of them requested further review of the Initiative. Four persons spoke at the meeting objecting to agenda item No. 16.

The terms "owner" and "fee title holder" were not defined in the Initiative.

B.      PROCEDURAL BACKGROUND

1.      *COMPLAINT*

On October 15, 2013, Hernandez filed his first complaint for declaratory relief and injunctive relief and petition for writ of mandate against Town only. He alleged one cause of action of a violation of the Brown Act for the actions taken by the Town council without the items appearing on the agenda. He attached the letter he sent to the Town on September 12, 2013, requesting that the Town cure the violation within the directives of Government Code section 54950.

Town filed a demurrer. Town noted defects in the complaint, e.g., Hernandez failed to allege he was a California citizen to show standing and the statutory basis for a writ of mandate. The trial court granted the demurrer on January 28, 2014, and gave Hernandez leave to amend.

8

## 2.    *FIRST AMENDED COMPLAINT*

Hernandez filed his first amended complaint (FAC) on February 14, 2014, against Town and Walmart.  He alleged he resided in Town and was a registered voter.  He alleged a Brown Act violation in his first cause of action.  He maintained that agenda item No. 16 for the Town Council's meeting read "Wal-Mart Initiative Measure" and "Provide information to staff."  No other information appeared on the agenda.  Hernandez alleged that none of the actions taken appeared on the agenda, including the three resolutions and the MOU.  Hernandez alleged that all of the actions taken were not regarding the Walmart Initiative but rather on what would be the Specific Plan.

Hernandez noted that Government Code section 54954.2, subdivision (a)(1), requires posting of an agenda 72 hours before a city council meeting with a brief description of each item of business to be discussed at the meeting, not to exceed 20 words.  The city council could only discuss and take action on those items on the agenda.  Since the Specific Plan, or the new Initiative, did not appear on the agenda, no action could be taken.  Hernandez insisted he was harmed because he was denied the benefits and protections provided by compliance with Government Code section 54954.  He would have attended the meeting or submitted comments if he knew the Initiative was going to be discussed.

In his second cause of action, he alleged a violation of article II, section 12.  According to that section, "No amendment to the Constitution, and no statute proposed by the electors by the Legislature or by initiative, that names any individual to hold any office, or names or identifies any private corporation to perform any function or to have

9

any power or duty, may be submitted to the electors or have any effect." Hernandez conceded the Initiative did not name Walmart, but it was clear to the electorate that the beneficiary of the Initiative was Walmart.

Hernandez sought an injunction on any development because the violation of the Brown Act rendered the actions taken by the Town council null and void. Moreover, the Initiative should be declared unconstitutional.

Town and Walmart brought motions to strike the second cause of action and joined in each other's motions. Town also filed a demurrer to the FAC. Town sought judicial notice of the Initiative, the voter information guide and sample ballot for the November 19, 2013, special election. Walmart also filed a demurrer. Hernandez opposed the motions to strike and demurrers.

On June 12, 2014, the trial court overruled the demurrers and denied the motions to strike. In a written order, the trial court found Hernandez was a registered voter in Town. It stated the Initiative was known as Measure D. It was known "colloquially as the 'Wal-Mart Initiative Measure.'" If upheld, it would allow for the development of a Walmart "supercenter" on property owned by Walmart. The trial court found a violation of article II, section 12. It found, "While Wal-Mart is not *named* in the Measure, it is nevertheless *identified,* because the Measure confers special privileges on the 'owner' of the property, which is Wal-Mart." The Initiative referenced the "developer" and "owner." While the trial court noted that reference to "developer" did not necessarily mean Walmart, "owner" was clearly Walmart. Town and Walmart filed answers to the FAC raising affirmative defenses.

10

3.    *MOTION FOR SUMMARY JUDGMENT/ADJUDICATION FILED BY HERNANDEZ*

Hernandez filed his Motion on November 14, 2014.  Hernandez stated there were no disputed material facts as to both of his causes of action.

Hernandez alleged that Town violated California's open meeting law, the Brown Act, by failing to properly list in the agenda for the Town council meeting the actions to be taken at the August 13, 2013, meeting.  Hernandez explained that there previously had been a Walmart initiative proposed but had been dismissed by another trial court because it named Walmart.  When Hernandez got the agenda for the August 13, 2013, meeting, he believed it was merely to advise staff what to do on the prior initiative.  However, the Town adopted the three new resolutions, including approving a special election on the Specific Plan.  Hernandez had no notice of the Specific Plan or that there would be action taken to set up a special election.  Had he been aware of the Initiative, he would have attended the meeting or submitted comments.  He was concerned about Walmart circumventing the normal process by paying for the special election.

As for the violation of the article II, section 12, Hernandez admitted the Initiative did not use the name Walmart but rather "identifies" Walmart.  The terms "site owner" and "developer" clearly referred to Walmart.  Walmart clearly was the beneficiary because it had spent over $700,000 to get the Initiative passed.  There was not a possibility of severing parts of the Initiative to save it.  Moreover, the ballot materials referenced Walmart.

11

Hernandez submitted a declaration that he was a resident of Apple Valley and saw the agenda prior to the meeting. He was not sure if the reference to the Walmart Initiative was to the first initiative or some other initiative. Regardless, he did not anticipate that any action was going to be taken at the meeting. Had he known, he would have attended the meeting and submitted comments. He would have asked for an additional report. There was no doubt in his mind that the Initiative benefitted Walmart.

Hernandez attached numerous exhibits to the Motion, including an article in the Daily Press about the development that named Walmart; a contribution by Walmart in the amount of $515,000 to Apple Valley Consumers for Choice; the ballot argument in favor of the Initiative that named Walmart; the meeting agenda that included item No. 16, which only stated "Wal-mart Initiative Measure" and advise staff; the meeting minutes that outlined the resolutions that were passed and that comments were submitted agenda item No. 16; the text of the Initiative and the resolutions mentioned at the meeting; the original Walmart initiative from 2011; the meeting minutes from the original initiative, which was Ordinance No. 420; Town's response to request to cure, which included that the agenda packet be available to all persons at the Town clerk's office or online; which included the Initiative and the resolutions, and there were 14 other people there to talk about the Initiative, and that it simply chose to put the Initiative on the ballot; an article from the San Bernardino County Sentinel about the Initiative and naming Walmart; documents showing Walmart was the owner of the property; a draft report for the shopping center that showed the eventual plan would have five retail spaces, one of which would be occupied by Walmart.

12

4. *TOWN AND WALMART JOINT OPPOSITION TO THE MOTION*

On January 15, 2015, Town and Walmart filed their opposition to the Motion (Opposition). Both contended the agenda fully complied with the mandates of the Brown Act and that the Initiative neither named nor identified Walmart in violation of article II, section 12. They alleged that the agenda gave more information than required by the Brown Act. Further, Hernandez had not shown prejudice as several other persons who were present at the August 13, 2013, meeting opposed the resolutions and special election, and requested further review.

Town and Walmart alleged the agenda for the meeting was posted on the Town's Web site, clerk's office and library. The agenda packet prepared for the meeting included a summary of the Initiative, the procedure that would be followed for a special election, and the resolutions that would be passed. A hyperlink on the Web site directed a person to the packet. At the meeting, 14 comment cards were received in regards to agenda item No. 16. Eight of the cards asked for further review of the matter. Four persons spoke in opposition at the meeting.

There was no Brown Act violation when there was substantial compliance. Further, substantial compliance is a factual question. Town did nothing to thwart the objective of the Brown Act. Hernandez had to show "meaningful prejudice to void a public agency action." There was substantial participation in the meeting in opposition to agenda item No. 16.

The Initiative did not violate article II, section 12. Town and Walmart agreed that some Town residents and others knew the commercial development included a Walmart

13

store. However, this was not the question for summary judgment; rather, the question was whether Walmart was named in the four corners of the Initiative, which it was not.

Town and Walmart argued that the Initiative should be approved unless there was a clear and unmistakable constitutional violation. They argued the "identification" of Walmart in extraneous materials was not a violation of the California Constitution as a matter of law. Further, even though the Initiative used the term "developer," it was not just Walmart; it applied to anyone who was going to put in a store in the development. Further, the fact that outside articles discussed Walmart, or the fact that Walmart helped fund the Initiative, did not establish a constitutional violation. Many persons in addition to Walmart would benefit, including the public and other stores who developed in the area.

Finally, if the trial court were to find that certain provisions of the Initiative were invalid, it could sever those offending provisions while leaving most of the Initiative intact.

The Town clerk submitted a declaration that she posted the agenda for the August 13, 2013, meeting on August 8, 2013. On the Town's Web site, a hyperlink directed the person to the agenda packet that was also available at the Town's library and clerk's office. The agenda packet included a summary of the Initiative, description of the procedure to conduct a special election, and the three resolutions.

The agenda packet or staff report for the meeting was included as an exhibit to the motion. It was lengthy, but labeled with the agenda item. Agenda item No. 16 included a summary of how the Initiative had been submitted to the Town council in the

14

appropriate manner. It gave three options for proceeding, which included adopting the Initiative, submitting the Initiative to voters at a special election, or conducting more review. The three resolutions were included. The report for agenda item No. 16 was 139 pages.

The comment cards were included as an exhibit. Several of those comment cards included requests that the Town council send agenda item No. 16 for further review.

The minutes from the meeting were included. At the meeting, the Town manager advised the Town council that there was an option to accept an offer from Walmart gifting sufficient funds to cover the expense of the election. The Town manager sought to have Town council authorize, if it chose a special election, a MOU, so that the money could be accepted. The offer to pay for the election was made by Walmart on August 9, 2013, which was after the agenda was posted. The motion to approve the MOU was passed by the Town council.

5.    *HERNANDEZ'S REPLY TO THE OPPOSITION*

Hernandez filed his reply to the Opposition on January 26, 2015. Hernandez again argued that despite the Dale Evan Specific Plan being adopted at the meeting, the agenda called it the Walmart Initiative Measure. Further, he was not required to review the agenda packet to find the information regarding agenda item No. 16 hidden in over 400 pages of materials. Hernandez suffered prejudice because there was no evidence that other persons raised the issues he wanted to raise at the meeting. For example, he had "serious concerns about Walmart making a mockery of the normal administrative process by trying to pay money to circumvent the process." Further, based on extrinsic evidence,

15

such as press releases and the initiative in 2011, it was clear the Initiative referred to the Walmart development and that Walmart was the beneficiary. Walmart, as the owner of the property, was given special duties and powers.

6. *RULING*

The matter was heard on January 29, 2015. The trial court stated its tentative ruling was to grant the Motion. The trial court noted first that just stating "Walmart Initiative" on the agenda could have been confusing because of the prior initiative. Further, the agenda did not have the resolutions listed and the actions to be taken. Even though there was an agenda packet, it was long and difficult for a member of the public to interpret. The other problem was the MOU was not mentioned in either the agenda or the agenda packet. The trial court then noted that as to the resolutions, since other members of the public commented on them, prejudice had not been shown. However, there were no comments on the MOU and it was not "surprising" because it did not appear in the agenda or agenda packet. The trial court believed that Hernandez had shown prejudice as to the MOU. Therefore, the trial court would summarily adjudicate the Brown Act violations in Hernandez's favor.

The trial court then found that the Initiative did not name Walmart. The trial court noted the Initiative referred to the owner of the property, which was Walmart. The court noted, "Now, of course, Wal-Mart could sell the property to someone, but that's a matter that is exclusively within Wal-Mart's decision-making ability." Based on the newspaper articles, everyone in the community knew that the Initiative would bring a Walmart to the

16

development. The trial court concluded, "Everybody knows who Wal-Mart is and knows what's going on with these properties."

Town argued that the Motion could not be granted because there were disputed facts. Town argued the Brown Act did not require that every "single tiny little piece of the project" be included. The trial court interrupted and stated it was important because Walmart was offering to pay for the special election. Town complained none of Hernandez's documents specifically raised an issue as to the MOU. Town argued that it was suspect Hernandez read the agenda, and claims now to be interested in the project, but did not attend the meeting.

Hernandez responded he had alleged that he was concerned that Walmart was paying to circumvent the normal administrative process. The public should have had an opportunity to address how it felt about Walmart paying for the special election as it affected the democratic process. Further, there was nothing in the record of the meeting that someone had objected to Walmart paying for the election.

Town and Walmart also argued there was no violation of article II, section 12. Walmart was not named in the Initiative. It was also clear the public was aware the development would include a Walmart. Article II, section 12 did not prohibit the public from knowing the beneficiary of an initiative. The court was required to give substantial deference to the will of the electorate. Town and Walmart argued that the Initiative identified different roles, such as developer and owner, but never specifically identified Walmart. To prohibit such action in an Initiative, as the "owner" and "developer" could always be identified, would overrule almost every land-use law. Further, "The role here

17

identified in this initiative does not identify a specific entity that is not capable of being changed." Further, the Initiative did not require that Walmart be the developer or owner.

Hernandez argued that Walmart, as the owner of the property, had a special privilege bestowed upon it by the Initiative. Walmart had a monopoly on what occurred on the property. The trial court took the matter under submission.

Hernandez's motion for summary judgment was granted by written order. According to the written order, Town's approval of the MOU at the August 13, 2013, meeting was declared invalid, void, and unenforceable. A peremptory writ of mandate was issued to command Town to set aside the approval of the MOU.[1] Further, the Initiative was declared to be invalid, void, and unenforceable under the California Constitution. It was ordered that Hernandez would receive attorney fees and costs, jointly and severally, from Town and Walmart at a later date to be determined. Notice of entry of judgment was filed on March 30, 2015. Discussion of the costs and attorney fees awarded will be discussed in detail, *post.*

## DISCUSSION

A.    STANDARD OF REVIEW

"A trial court will grant summary judgment where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law." (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.) "Under the summary judgment statute, the

---

[1] Town and Walmart asked this court to take judicial notice of the proposed judgment to show the trial court's order only found prejudice as to the lack of notice on the MOU. We find no reason to take judicial notice; the request is denied.

moving papers must demonstrate that "material facts" are undisputed and that the movant is entitled to judgment as a matter of law. [Citation.] The moving party's papers are strictly construed whereas those of the opposing party are liberally construed, with all doubts about the granting of the motion resolved in favor of the opposing party." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 352.)

B.    <u>BROWN ACT VIOLATION</u>

The trial court granted the Motion finding that the agenda posted by Town for the August 13, 2013, council meeting did not properly include notice that it was considering approving the MOU accepting a gift from Walmart to pay for the special election. Further, it found that Hernandez was prejudiced by the lack of notice as no other community member discussed the fact that Walmart was paying for the special election at the Town council meeting. Town and Walmart concede the MOU was not in the agenda or agenda packet. Nonetheless, they argue Town substantially complied with the Brown Act. Further, Hernandez failed to show prejudice in the Motion.

The Brown Act, also known as the California open meeting law, is designed to encourage public participation in government decision making. (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 681.) "[T]he keystone of the Brown Act is the requirement that '[a]ll meetings of the legislative body of a local agency shall be open and public. . . .'" (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 375.) "The Brown Act begins with a forceful declaration of the Legislature's purpose: 'In enacting this chapter, the Legislature finds and declares that the public commissions, boards and

19

councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.' " (*San Joaquin Raptor Rescue Center v. County of Merced* (2013) 216 Cal.App.4th 1167, 1175 (*San Joaquin*).)

" 'At least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda containing *a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session.* A brief general description of an item generally need not exceed 20 words. . . . [¶] No action or discussion shall be undertaken on any item not appearing on the posted agenda, except [exceptions that are inapplicable here]." (*Moreno v. City of King* (2005) 127 Cal.App.4th 17, 24.)

Government Code section 54960.1 provides: "(d) An action taken that is alleged to have been taken in violation of Section 54953, 54954.2, 54954.5, 54954.6, 54956, or 54956.5 shall not be determined to be null and void if any of the following conditions exist: [¶] (1) The action taken was in substantial compliance with Sections 54953, 54954.2, 54954.5, 54954.6, 54956, and 54956.5."

Here, Town and Walmart argued below that the posted agenda included an attached agenda packet; however, Hernandez maintained that he should be able to

identify from the posted agenda alone the items to be discussed at the meeting. We need not resolve whether the Brown Act allows for the submission of an agenda packet with the agenda in order to conform with the Brown Act, as here, while it is true the agenda and agenda packet included the resolutions to be adopted and the Initiative language, it did not include any information regarding the MOU, which was adopted by Town. The MOU allowed the Town to accept a gift from Walmart in order to pay for the special election and is the only claim found by the trial court to have prejudiced Hernandez. No one at the meeting discussed the matter or commented on the MOU. In fact, it was first proposed at the meeting as Walmart offered the gift to the Town the day after the agenda was posted. This is troublesome as it is conceivable this was a major factor in the decision to send the matter to the electorate.

In *San Joaquin*, *supra*, 216 Cal.App.4th 1167, the Merced County Planning Commission posted an agenda that set forth one item of business for its upcoming meeting, which was the potential approval of a subdivision application to divide 380.45 acres into nine parcels. "The agenda, however, failed to mention that the Commission would *also* be considering whether or not to adopt a CEQA document known as a mitigated negative declaration (MND) concerning the environmental impact of the project." (*Id.* at p. 1170, fn. omitted.) At the meeting, the Commission approved the project and adopted the MND. (*Ibid.*) The appellate court found there was a violation of the Brown Act. First, it emphasized the language in Government Code section 54954.2 that "*each item of business*" must be on the agenda. (*San Joaquin*, at p. 1176.) It also noted that the MND was "plainly a distinct item of business, and not a mere component

21

of project approval, since it (1) involved a separate action or determination by the Commission and (2) concerned discrete, significant issues of CEQA compliance and the project's environmental impact." (*Id*. at p. 1177, fns. omitted.)

In this case, agenda item No. 16 only listed that the "Walmart Initiative Measure" and the direction to be given to staff would be discussed at the meeting. In the agenda packet, Town included a summary of the resolutions that it passed and the Initiative. In none of the documents was the "item of business" that Town council was going to accept a gift from Walmart in order to pay for a special election to pass the Initiative. Hernandez was given no notice that this important "item of business" was going to be voted on at the Town council meeting.

Here, Town's action of putting the Initiative on the ballot was properly found null and void by the trial court as the Town council's decision to put the Initiative on the ballot was done so in violation of the Brown Act. We do not end our review here. It is clear that this matter will again be considered by the Town council and another initiative will be possibly adopted at a later date after appropriate public comment. We therefore address whether the Initiative as written violated article II, section 12.

C.    CONSTITUTIONAL VIOLATION

The trial court also concluded that the Initiative violated article II, section 12 and declared the Initiative null and void. Walmart and Town contend that the Initiative did not name Walmart in the four corners of the Initiative. They insist the trial court erred by looking outside the Initiative to the ballot materials to "identify" Walmart as the

22

beneficiary of the Initiative. We conclude that the Initiative as written does not violate article II, section 12.

As previously stated, article II, section 12 provides that "No amendment to the Constitution, and no statute proposed to the electors by the Legislature or by initiative, that names any individual or any office, or names or identifies any private corporation to perform any function or to have any power or duty, may be submitted to the electors or have any effect." "The Legislature's chosen language is the most reliable indicator of its intent because ' "it is the language of the statute itself that has successfully braved the legislative gauntlet." ' [Citations.] We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning. [Citations.] If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082-1083.)

The parties do not dispute that the Initiative did not specifically name Walmart. However, the trial court accepted Hernandez's argument that everyone knew that Walmart would benefit from the Initiative. Further, the trial court found the Initiative granted powers to the owner and developer of the property, who was clearly Walmart, as evidenced by the ballot materials.

The Initiative provided, "As used herein, the term 'developer' shall mean any individual or other entity proposing any development within the Specific Plan area." The Initiative provided that the developer would pay for the costs of any code enforcement and attorney fees for any action taken concerning the approval of the Specific Plan. The

23

Initiative was being proposed so that a commercial development with a combination of retail and service establishments would be added to the Town. The Initiative also provided for strict rules as to the development of the area and specific rules for parking, signage, and landscaping. There was reference to the fact that before any construction could occur on the parcel, the "owner" was to contact the local fire department to ensure compliance with any relevant fire protection requirement. The developer was to obtain water for the property. The developer was also responsible for the drainage systems. The diagrams submitted with the Initiative referred to "major tenant." However, the Initiative never named Walmart, and it was the sole corporation entitled to develop or own the property.

Only a few cases have addressed article II, section 12. *Pala Band of Mission Indians v. Board of Supervisors* (1997) 54 Cal.App.4th 565 (*Pala*), involved the following: "In 1994, San Diego County voters approved Proposition C, an initiative entitled the 'Gregory Canyon Landfill and Recycling Collection Center Ordinance.' Proposition C amended the San Diego County General Plan (General Plan) and the San Diego County Zoning Ordinance (Zoning Ordinance) to designate an area known as 'Gregory Canyon' for use as a privately owned solid waste facility. The initiative conditioned the development of the facility on approval from various state and federal agencies. The initiative placed the responsibility for obtaining the state and federal permits on the 'Applicant,' defined as 'Servcon–San Marcos, Inc. or its assignee or authorized representatives.' " (*Id.* at p. 570.)

The *Pala* court first noted that "Our review of this appeal is . . . strictly circumscribed by the long-established rule of according extraordinarily broad deference to the electorate's power to enact laws by initiative. The state constitutional right of initiative or referendum is 'one of the most precious rights of our democratic process.' " (*Pala*, *supra*, 54 Cal.App.4th at pp. 573-574, citing to *Mervynne v. Acker* (1961) 189 Cal.App.2d 558, 563.)

In assessing whether the initiative violated article II, section 12, the appellate court noted that most of the initiative referred to construction of the waste facility and the necessary permits. The facility would be based on a detailed plan submitted by the "applicant." The *Pala* court concluded, "Thus, the proposition provides the applicant (defined as Servcon) with the sole responsibility of preparing and submitting the site plan that will ultimately define the precise nature of the project created by the proposition. This imposes functions, powers, and duties on Servcon within the meaning of article II, section 12." (*Pala*, *supra*, 54 Cal.App.4th at p. 584.)

The court found that the initiative granted powers to Servcon that it did not have prior to the voters approving the initiative. The court emphasized that although Servcon as the owner of the property had rights prior to the proposition to develop the property, it had new rights after the proposition. The court noted, "In practical terms, it means that the current owner of the property is now bound by local law to follow through with that contract and, should a third party attempt to claim a superior right, Servcon would have the ability to rely on the terms of Proposition C to establish its exclusive right." (*Pala*, *supra*, 54 Cal.App.4th at p. 585, fn. omitted.)

25

The *Pala* court then discussed whether severing the definition of the "Applicant" as Servcon would change the proposition. It noted that Servcon was not mentioned in the ballot materials. It found the definition severable, because "the proposition specifically imposes functions, powers, and duties on the 'Applicant,' not Servcon." (*Pala*, *supra*, 54 Cal.App.4th at p. 587.) It would leave the " 'proposed operator of the facility' " or the " 'operator of the facility' " would have the powers and duties. (*Ibid.*) The *Pala* court noted in a footnote, "We note that in practical terms, our conclusion will not necessarily change the fact that Servcon will be responsible for performing the functions of the 'Applicant.' This result derives from the fact that a private property owner ultimately has the right to select the entity that may apply to operate, and operate, a business on its property." (*Ibid.* fn. 22.)

Here, the Initiative uses words including "developer" and "owner." The Initiative does not name or identify Walmart. As a practical matter, as in *Pala*, Walmart as the owner and developer of the property would be responsible for the acts under the Initiative. However, since Walmart could sell the property, it would have no superior right over the subsequent owner or developer of the property. Just as in *Pala*, just striking the definition of "applicant" did not change that it would be the entity responsible. Walmart as an entity has no superior right under the Initiative. If it sold the property, or decided that it did not want to develop the property, it would have no rights under the Initiative superior to any other corporation or person.

The only other significant case addressing article II, section 12 is *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805 (*Calfarm*), a challenge to Proposition 103.

Proposition 103 was an initiative measure adopted by the voters on November 8, 1988, "making numerous fundamental changes in the regulation of automobile and other types of insurance." (*Id.* at p. 812.) It was enacted to "ensure that 'insurance is fair, available, and affordable for all Californians.'" (*Id.* at p. 813.) Some of the changes included reducing current rates and putting restrictions on raising rates. (*Ibid.*) One of the provisions stated, "Insurers are required to mail notices to policy holders informing them they may join a nonprofit corporation to be formed to represent their interests by persons appointed for this purpose by the Insurance Commissioner." On appeal, the petitioners maintained that the provision requiring notification of the formation of a nonprofit corporation violated "the prohibition of article II, section 12 of the California Constitution against naming or identifying a private corporation in an initiative to perform any function or duty." (*Id.* at p. 814.)

Initially, *Calfarm* provided a history of article II, section 12.[2] In 1950, voters adopted former article IV, section 1d, which prohibited an initiative from naming an individual in an initiative or measure. (*Calfarm*, *supra*, 48 Cal.3d at pp. 832-833.) "The second provision was enacted in 1964. In that year a private corporation, the American Sweepstakes Corporation, financed a proposed constitutional amendment establishing a state lottery and designating the sponsoring corporation as administrator of the lottery.

---

[2] The Center for Community Action and Environmental Justice filed an amicus curiae brief insisting that this court should uphold the trial court's order. They argue that this court should adopt an interpretation of article II, section 12 that would deem a private corporation is "identified" within the meaning of the section even if it is only from sources outside the four corners of the initiative at issue. They have provided the legislative history of now article II, section 12.

27

The Legislature countered by putting a constitutional amendment on the same ballot specifying that any amendment "which names any private corporation . . . to have any power or duty" shall have no effect. (Former art. IV, § 1d, subd. (b).) Significantly the Legislature considered, but rejected, limiting this prohibition to profit-making corporations. [Citation.] The voters defeated the lottery, but approved the prohibition on amendments which name private corporation.)" (*Id.* at p. 833.) In 1966, the Constitution Revision Commission combined the two measures into a single provision. It added the "a prohibition against 'identifying' as well as 'naming' persons or corporations." (*Ibid*.) The voters approved the 1966 revision, which is now article II, section 12.

The *Calfarm* court found that Proposition 103 provided for the formation of a nonprofit corporation, and it had the sole power to send out information to consumers; and no other corporation could perform this function. Specifically, it concluded, "The explicit terms of article II, section 12, demonstrate that the consumer-advocacy provision of Proposition 103 is invalid. The constitutional prohibition bars naming or identifying a private corporation to perform any function. The consumer-advocacy provision 'identifies' a particular corporation—that one which is to be formed by an interim board of public members appointed by the Insurance Commissioner. As we explain later in this opinion, the corporation to be formed is a private corporation. Finally, that corporation is identified to perform a 'function,' to 'advocate the interests of insurance consumers in any forum.' [Citation.] We see no escape from the clear and explicit language of the state Constitution." (*Calfarm*, *supra*, 48 Cal.3d at p. 832.) Such creation of a corporation violated article II, section 12. (*Calfarm*, at p. 835.)

28

In applying *Calfarm* here, the legislative history "only serves to confirm our reading of the plain language of the statute." (*MacIsaac v. Waste Management Collection and Recycling, Inc.*, *supra*, 134 Cal.App.4th at p. 1088.) Unlike the situation in *Calfarm*, here, the developer and owner of the property within the Specific Plan had the power to develop the property and it had the duty to obtain the proper permits and approvals. The Initiative did not assign that power to Walmart only. If we were to extend article II, section 12 as requested by Hernandez and the amicus curiae, any land-use initiative would be invalidated as one only would need to establish the company who intended to develop the property or owned the property, even though the Initiative itself makes no reference to the entity. We do not find anything in the legislative history or the language of the statute that article II, section 12 was intended to be this broadly interpreted. As such, we find that the Initiative does not violate article II, section 12.

D.      ATTORNEY FEES

Hernandez, as the prevailing party on the Brown Act violation, was entitled to attorney fees and costs. (Govt. Code, § 54960.5.) Town and Walmart contend Hernandez failed to establish that $550 was a reasonable hourly attorney rate prevailing in the community for similar work. As such, the trial court's award for attorney fees was too high.

1.      *ADDITIONAL FACTUAL BACKGROUND*

Hernandez filed a motion for attorney fees under Government Code section 54960.5 and Code of Civil Procedure section 1021.5. He was seeking a total award of $56,298.75, which included preparation of the instant motion for attorney fees.

29

Hernandez sought an hourly rate of $550 for his attorney Cory J. Briggs; $275 an hour for Mekaela M. Gladden; $225 an hour for Anthony Kim; and $125 an hour for two paralegals and Westlaw fees. Briggs submitted a declaration. He had been licensed to practice law since 1995. He indicated as a principal shareholder in his firm he regularly surveyed colleagues to find out the prevailing market rates for attorney fees in the Southern California region. He was advised by other attorneys that for an attorney with more than 15 years of experience in land-use issues, the average rate was between $500 to $800. Briggs spent 40.25 hours on the case. He also declared that the rate of $550 had been approved in three other cases that he handled in San Diego County.

Town and Walmart filed opposition. They argued that Hernandez had failed to satisfy his burden of the appropriate market rate for attorney fees for San Bernardino County, where the matter was tried. The fees sought should be reduced because the rates were unreasonably inflated. Hernandez could not rely on the rates in San Diego County.

The matter was heard on July 16, 2015. The trial court addressed the rate charged by Briggs. It noted "the driving issue is what I would characterize as sticker shock that results from Mr. Briggs' billing rate of $550." However, the trial court noted that this was complex litigation. Further, all of the attorneys submitted "top flight legal work." The trial court did note it had not seen the rate charged "in this community for any kind of litigation" The trial court was aware that Briggs charged this same amount in all of his other land-use cases. Also, the trial court noted that Briggs had declared that he averaged his rate to $550 so he would not charge different rates in San Diego County, which actually could be higher, and the Inland Empire, which could be lower.

30

The trial court noted that the fee was higher than fees charged in San Bernardino County. It estimated the fair rate was probably $440 an hour. However, the trial court had to take into account the multiplier for a contingency case to which Briggs was entitled, which was 1.25. Applying the multiplier, the fee would end up being the same amount of $550. The trial court determined it would award the rate as given but would not apply a multiplier. Town and Walmart argued that the rate should be reduced to $440 or less and that no multiplier should be applied. The trial court decided it would keep the rate at $550 but not apply the multiplier.

Attorney fees were awarded in the amount of $45,053.75, which reduced the fees for preparing the motion for attorney fees and denied the Westlaw fees.

2.    *ANALYSIS*

"A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion. [Citation.] ' "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong[']—meaning that it abused its discretion. [Citations.]" ' [Citation.] Accordingly, there is no question our review must be highly deferential to the views of the trial court." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and

31

the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.] The reasonable hourly rate is that prevailing in the community for similar work." (*PLCM Group, Ins. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "After making the lodestar calculation, the court may augment or diminish that amount based on a number of factors specific to the case, including the novelty and difficulty of the issues, the attorneys' skill in presenting the issues, the extent to which the case precluded the attorneys from accepting other work, and the contingent nature of the work. [Citation.] 'The purpose of such adjustment is to fix a fee at the fair market value for the particular action.'" (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616.)

Here, the trial court considered the prevailing rate for attorneys in San Bernardino County. While it determined that $550 may be high, and that the actual rate was closer to $440, it essentially imposed that rate by refusing to apply a multiplier for the fact it was a contingency case. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132-1133 ["The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights"].) The trial court did not abuse its discretion in setting Briggs's hourly rate of at $550 considering the entirety of the determination of the trial court regarding attorney fees.

E.    COSTS

Walmart and Town contend the memorandum of costs was filed late and should not have been considered by the trial court. In the alternative, they argued the award

32

included an improper charge for service of the letter to Town to correct the Brown Act violation.

### 1. *ADDITIONAL FACTUAL BACKGROUND*

Hernandez filed his memorandum of costs on April 15, 2015. The amount requested was $5,470.86. As part of the costs, Hernandez was requesting a $350 fee for "Process server for Brown Act cure request."

On May 4, 2015, Town and Walmart filed a motion to strike the memorandum of costs, or in the alternative, to tax costs. They contested some of the courier fees and the fee for a process server to serve the Brown Act cure letter. They also contended that pursuant to Code of Civil Procedure section 1034 and California Rules of Court, rule 3.1700(a)(1), the memorandum of costs had to be filed 15 days after the date of service of written notice of entry of judgment. Hernandez's counsel sent written notice of the judgment on March 30, 2015. The Memorandum of Costs was filed on April 15, 2015; it should have been filed on April 14, 2015. A late-filed memorandum of costs is required to be stricken and the costs waived. Further, since Hernandez was the party who served the notice of entry of judgment, no additional time for mailing should be afforded. Town and Walmart also contended the cure letter could have been mailed or sent by email and did not have to be personally served.

Hernandez filed a response that he was entitled, even as the sender of the notice of judgment, to the mailing period. Hernandez did not address why the memorandum of costs was filed one day after the time period expired. Hernandez also argued that the $350 fee for service of the cure letter was appropriate to ensure that Walmart and Town

33

received the letter.  Additionally, Walmart's attorney had asked for service by courier in the lawsuit as opposed to mail.  Emails attached to the response supported that counsel had requested overnight mail on oppositions and replies because they were not being received by regular mail.

Town and Walmart filed a reply to the opposition that the five-day service extension of Code of Civil Procedure section 1013, subdivision (a), for mailing of the notice of judgment only applied to the party served.

On June 25, 2015, the trial court denied the motion to strike the Memorandum of Costs finding that although the Memorandum was untimely filed, the defect was not jurisdictional and Town and Walmart had failed to show prejudice.  The trial court noted courts "have broad discretion to allow relief from late filings when there is an absence of prejudice to the opposing party."  There was no prejudice shown for the one-day delay. The trial court did strike courier fees in the amount of $228.90, but allowed the fees for service of the Brown Act cure.

2.      *ANALYSIS*

The prevailing party is entitled to costs as a matter of right.  (Code of Civ. Proc., § 1032, subd. (b).)  California Rules of Court, rule 3.1700(a)(1) provides in relevant part: "A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after . . . the date of service of written notice of entry of judgment or dismissal." Code of Civil Procedure section 1034, subdivision (a), provides that "[p]rejudgment costs allowable under this chapter shall be claimed and contested in accordance with rules adopted by the Judicial Council."

34

Code of Civil Procedure section 1013, subdivision (a), provides that service by mail is complete at the time of deposit in a post office or mail box, "but any period of notice and any right or duty to do any act or make any response within any period or on a date certain after service of the document, which time period or date is prescribed by statute or rule of court, shall be extended five calendar days, upon service by mail, if the place of address and the place of mailing is within the State of California. . . . This extension applies in the absence of a specific exception provided for by this section or other statute or rule of court."

In *Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc.* (2000) 85 Cal.App.4th 1042, the court considered whether Code of Civil Procedure section 1013 extended a trial court's time to grant a motion for new trial where notice of entry of judgment was served by mail. (*Westrec*, at p. 1047.) The Court of Appeal held that Code of Civil Procedure section 1013 did not extend the trial court's time to act, concluding, among other things, that Code of Civil Procedure section 1013 provides an extension only to "the person served by mail." (*Westrec*, at p. 1048.) The court concluded that the relevant statutory language was ambiguous, and the legislative history supported the conclusion that the extension of time provided by Code of Civil Procedure section 1013 applied only to the person being served. (*Westrec*, at p. 1049.)

Based on the foregoing, Hernandez as the server of the notice of entry of judgment was not entitled to the five-day extension to serve his memorandum of costs. Accordingly, the memorandum was late. The trial court here excused the late filing finding no prejudice to Town and Walmart.

35

"The time provisions relating to the filing of a memorandum of costs, while not jurisdictional, are mandatory." (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 929.) In *Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, the court found that the memorandum of costs was untimely and that the trial court erred by awarding costs. (*Id.* at p. 426.) However, numerous other cases have held that, "[i]n the absence of prejudice, the trial court has broad discretion in allowing relief on grounds of inadvertence from a failure to timely file a cost bill." (*Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 381; see *Wilson v. Hinkle* (1977) 67 Cal.App.3d 506, 513.)

However, in *Pollard,* which was relied upon in *Wilson*, the party seeking costs moved for permission to file a late memorandum of costs on the ground that counsel inadvertently failed to file a timely cost bill. (*Pollard v. Saxe & Yolles Dev. Co.*, *supra*, 12 Cal.3d at pp. 380-381.) In *Russell v. Trans Pacific Group* (1993) 19 Cal.App.4th 1717, superseded on another ground by statute as stated in *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1196, the court addressed the defendant's failure to file a timely motion for attorney fees. It found the cost procedure requirements were mandatory and therefore the trial court did not have discretion to disregard noncompliance. (*Russell*, at p. 1726, 1728.) It then noted, "Nevertheless, the mandatory nature of the procedural requirements does not mean that the trial court is deprived of jurisdiction to grant relief under [Code of Civil Procedure] section 473 . . . upon a proper showing of mistake, inadvertence, surprise, or excusable neglect." (*Id.* at p. 1728.) In *Russell*, the defendant did file a motion under Code of Civil Procedure section 473, but

36

only argued that the failure to timely file the motion should be excused because plaintiffs were not prejudiced by the noncompliance. They did not address the mistake of law or inadvertence. (*Russell*, at pp. 1729-1731.) The appellate court found the trial court properly denied relief because, "absence of prejudice to the opposing party is not in and of itself sufficient to entitle a party to relief under [Code of Civil Procedure] section 473. Rather, the rule is that in the absence of prejudice, the trial court has broad discretion to allow relief on one of the statutory grounds—excusable mistake, inadvertence, neglect, or surprise." (*Id.* at pp. 1730-1731.)

Here, despite Town and Walmart moving to strike the memorandum of costs, Hernandez never addressed the mistake of law or inadvertence that rendered the late filing excusable. The trial court never addressed such mistake, but rather concluded that since there was no prejudice to Town and Walmart it would ignore the time restraints of California Rules of Court, rule 3.1700. The trial court did not address if there was a mistake of law or inadvertence by Hernandez's counsel. Based on the fact Hernandez never attempted to show why the memorandum of costs was filed late and there was no finding by the trial court, the denial of the motion to strike the memorandum of costs was erroneous as Hernandez failed to make a proper showing pursuant to Code of Civil Procedure section 473.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The denial of the motion to strike the memorandum of costs is reversed and Hernandez shall not receive costs. Although we have concluded that the Initiative did not violate the California

37

Constitution, since the decision to place the Initiative on the ballot by the Town Council is null and void based on the Brown Act violation, the Initiative is null and void. The parties shall bear their own costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.