Filed 11/23/22  San Diegans for Open Government v. Poway Unified etc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT, | D078820 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2017-00015136-CU-MC-CTL) |
| POWAY UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Briggs Law Corporation, Cory J. Briggs and Janna M. Ferraro for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Mark R. Bresee, Amy W. Estrada, and Alyssa Ruiz de Esparza for Defendants and Respondents.

Appellant San Diegans for Open Government (SDOG) appeals a judgment dismissing its complaint against Poway Unified School District (District) in which it alleged the District's hiring and contract negotiations

with Marian Kim Phelps, Ed.D. (Phelps) for the position of superintendent violated the Ralph M. Brown Act (Brown Act), Government Code section 54950 et seq.[1] The trial court found the District's governing board violated the Brown Act by having private discussions regarding compensation before the board took final public action on Phelps's contract, but the court also found SDOG failed to establish prejudice to the public from the violations.

SDOG contends the trial court erred in requiring a showing of prejudice and, even if prejudice is required, the court's finding was not supported by substantial evidence. We conclude SDOG was required to show prejudice from any violation of the Brown Act and there is substantial evidence to support the trial court's finding that it failed to do so. We, therefore, affirm the judgment.

BACKGROUND

A.  *Factual Background*

In late 2016 and early 2017, the District's governing board initiated a nationwide search for a new superintendent. The board held several closed session meetings to consider and interview candidates. Minutes from these meetings identified closed session items to consider employment of a superintendent pursuant to section 54957. The board narrowed the preferred candidates to two applicants, including Phelps. After final interviews with the two candidates on January 30, 2017, the majority of the board preferred Phelps.

A couple of days before the board narrowed the candidates, board president Michelle O'Connor-Ratcliff, contacted an attorney who was already under contract with the District. She asked the attorney to assist in

---

1     Further statutory references are to the Government Code unless otherwise stated.

negotiating a contract with the individual the board "expected to designate as its preferred candidate after the final round of interviews."

The agenda for a meeting on January 31, 2017 identified a closed session item as "Conference with Labor Negotiator." It designated the board president as the agency's representative and an unidentified superintendent candidate as an unrepresented employee.

Two board members, Charles Sellers and Kimberly Beatty, took issue with the board president's decision to contact an attorney and to place the "Conference with Labor Negotiator" item on the January 31, 2017 meeting agenda. A motion to remove the item from the agenda failed with a vote of two to three.

Sellers and Beatty sent a written demand on February 7, 2017 to cure the alleged Brown Act violations. Beatty reported the matter to the San Diego County District Attorney's Office. The District Attorney took no action on the allegations.

The board appointed board members Sellers and T.J. Zane to work with the attorney to negotiate a potential contract with Phelps. The attorney served as the primary contact with Phelps.

The District's search consultant asked for a copy of Phelps's contract with the public school district where she was then employed. Thereafter, she exchanged emails and draft contracts with the attorney. She had some communications with the two designated board members. As the negotiations progressed, the board withdrew Sellers as a board representative. Phelps believed the attorney conferred with the board about anything he negotiated.

On February 14, 2017, during a closed session meeting, Zane and the attorney stepped out of the meeting to call Phelps to clarify her point of view

3

regarding certain issues. The board then reviewed its position and provided instructions to the negotiators. Although contract negotiations were ongoing, the board decided to publicly announce Phelps as the finalist for the superintendent position.

According to board president O'Connor-Ratcliff and board member Zane, the board limited its closed session discussions on January 31, 2017 and February 14, 2017 to "reviewing its position regarding a contract with a new superintendent and instructing its negotiators." The board did not take action on proposed compensation and did not take action to appoint or employ Phelps.

Board clerk Darshana Patel reported in open session that Phelps was selected as the finalist for the superintendent position with three board members voting in favor and two opposed. Patel also reported that the board planned to make a final appointment and would bring forward a contract for approval at the next meeting on March 7, 2017.

Thereafter, board member Zane posted a message on his social media account stating, "BREAKING: PUSD Board announces its choice for a new Superintendent! Congratulations Dr. Phelps!" The post shared a post from a District social media account stating the board "announced [Phelps] as our new Superintendent. . . ." Zane stated his post intended only to convey that the board announced Phelps as the finalist.

Media outlets reported Phelps would become the new superintendent on March 7, 2017 when the board would approve her contract. The District issued a press release, sent a letter to District families, and posted additional messages on social media about the board's selection of Phelps. The statements all indicated she would officially be named superintendent at the March 7, 2017 board meeting when the board would approve her contract.

Contract negotiations continued after this meeting. Phelps reached an agreement about the amount of her compensation by the latter half of February. She understood the draft contract was something the board was willing to offer and she was comfortable placing the draft on the March 7, 2017 agenda. However, she also understood she would only know if the board agreed when they voted on the contract.

SDOG's attorney sent a letter to Phelps on March 1, 2017 stating SDOG believed the District had violated and "may be poised to again" violate the Brown Act in connection with its decision to hire her, which would render the board decisions null and void. It stated SDOG was challenging "and will continue to challenge the validity of your employment contract."

O'Connor-Ratcliff and Patel were not involved in the contract negotiations with Phelps other than to provide direction to negotiators in the closed sessions on January 31, 2017 and February 14, 2017. They did not see the final contract until it was posted with the agenda for the March 7, 2017 meeting.

The agenda for the March 7, 2017 meeting identified the appointment of a superintendent as an item for closed session. It listed approval of an employment agreement between the District and the superintendent as an action item for open session. The District attached to the agenda a draft of the proposed employment agreement with Phelps.

On March 7, 2017, the board took action in closed session to appoint Phelps as superintendent. Three board members voted in favor of her appointment and two opposed the appointment. Board clerk Patel reported out in open session about the action taken. In open session, after a reading of the summary of key terms of the proposed employment contract for Phelps, the board then considered and approved the contract. Eight members of the

5

public spoke in support of Phelps's employment and approval of the contract and 14 individuals submitted written support. Only board members Sellers and Beatty opposed. Sellers acknowledged Phelps's accomplishments, but said he believed they could make a better hire for less money. He also questioned the legality of the hiring process. Beatty objected to the hiring process, but did not raise specific concerns about Phelps's qualifications or the contract. No member of the public opposed Phelps's appointment or the contract.

B.    *Litigation*

SDOG's counsel sent a letter on March 20, 2017 requesting a cure of Brown Act violations. The board's counsel responded saying there was no violation or any violation was already cured or corrected.

SDOG filed suit on April 27, 2017 asserting a single cause of action alleging the board, Phelps, and the three board members who voted to appoint her as superintendent violated the Brown Act in both appointing her and negotiating her contract. SDOG sought a declaration that the district failed to fully comply with the Brown Act, injunctive relief prohibiting the district from taking further action with her employment contract, and a writ of mandate requiring the district to rescind the approval of Phelps's contract until it complies with the Brown Act.[2]

The matter proceeded to a bench trial. The court considered written evidence, briefing, and oral arguments at two hearings. After taking the matter under submission, the court issued a tentative decision in favor of the

---

2      In a prior appeal, we affirmed an order striking the complaint against Phelps and the three individual board members pursuant to Code of Civil Procedure section 425.16. (*San Diegans for Open Government v. Poway Unified School District et al.* (Dec. 19, 2018, D073409) [nonpub. opn.].)

District. The court directed the District to prepare a statement of decision and a judgment.

The court issued a detailed statement of decision on January 13, 2021, after considering a proposed statement of decision and SDOG's objections. The court noted that section 54957, subdivisions (b)(1) and (4) prohibit discussion or action on proposed compensation in closed session. Because the District did not publicly identify its designated representative, the court determined the District could not find safe harbor in section 54957.6.

The court concluded, based on the evidence and reasonable inferences, "that compensation had to have been discussed with and/or approved by a majority of the [b]oard" prior to the March 7, 2017 open meeting. Although SDOG had not established that the board approved "all terms of the employment agreement" before the meeting, the court concluded the board violated the Brown Act and the violations were not cured by the fact the March 7, 2017 meeting complied with the Brown Act.

Nevertheless, the court found there was no prejudice from the violations because the March 7, 2017 public meeting, including the agenda, "allowed the public to learn all of the terms of the proposed contract and allowed public comment." No member of the public objected to either hiring Phelps or the contract, including the compensation package. The court commented that there was no reason SDOG's members could not have appeared at the meeting to express any concerns about hiring Phelps or the terms of her contract since SDOG knew of the negotiations before the March 7 meeting and had notice of the meeting.

The court entered judgment in favor of the District on February 3, 2021 and dismissed SDOG's claims. SDOG moved for new trial on the issue of prejudice. The court denied the motion. This appeal follows.

7

DISCUSSION

SDOG clarified in its reply brief that it does not challenge the appointment of Phelps in closed session or the approval of her contract "as a whole" at the March 7, 2017 open meeting.  It acknowledges the board was permitted to discuss her appointment in closed session and accepts the trial court's finding that the March 7, 2017 agenda and open meeting where her contract was approved complied with the Brown Act.

SDOG challenges the trial court's determination that there was no prejudice to the public even though the court found the District violated the Brown Act because "compensation had to have been discussed with and/or approved by a majority of the [b]oard prior to [the March 7, 2017] meeting."  SDOG contends reversal is required because either prejudice should not be required for a violation of section 54957 or SDOG established prejudice from the fact of the violation.[3]

Although the issue was not as fully developed in its briefing before the trial court as on appeal, SDOG raised the issue of prejudice in its request for

_____

[3]    In a footnote in its reply brief, SDOG stated it seeks to nullify "those portions of [ ]Phelps's contract related to compensation."  The footnote further stated, "to the extent this [c]ourt believes that the issue has not been fully developed, it should remand the case for further development in that respect."  An appellant cannot bury a substantive legal argument in a footnote and hope to avoid waiver of that argument.  (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947 ["Footnotes are not the appropriate vehicle for stating contentions on appeal."]; *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 624, fn. 2 ["We do not view as adequate to preserve an issue on appeal . . . one footnote mention of [it]"]; *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1260, fn. 10 [argument raised in footnote without analysis or discussion is waived]; *Roberts v. Lomanto* (2003) 112 Cal.App.4th 1553, 1562 [assertions raised only in footnote may be properly disregarded].)  We do not reach the issue of remedy, however, based on our conclusion that SDOG did not establish prejudice.

8

a statement of decision and its motion for new trial. Therefore, we will consider the issue. "Where the facts are undisputed, our review of this challenge is de novo. [Citations.] However, to the extent the trial court drew factual inferences, we defer to those inferences if they are supported by substantial evidence." (*Fowler v. City of Lafayette* (2020) 46 Cal.App.5th 360, 366 (*Fowler*).)

A.    *Overview of Pertinent Brown Act Provisions*

When the Legislature enacted the Brown Act in 1953, it expressly declared "that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly." (§ 54950.) Section 54953 accordingly provides "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter."

One exception is the "personnel exception" which permits the legislative body of a local agency to hold closed sessions "to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee . . . ." (§ 54957, subd. (b)(1).) "[T]he underlying purposes of the 'personnel exception' are to protect the employee from public embarrassment and to permit free and candid discussions of personnel matters by a local governmental body." (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 955.) Generally, "[c]losed sessions held pursuant to this subdivision shall not include discussion or action on proposed compensation except for a reduction of compensation that results from the imposition of discipline." (§ 54957, subd. (b)(4).) This is because "[s]alaries

and other terms of compensation constitute municipal budgetary matters of substantial public interest warranting open discussion and eventual electoral public ratification." (*San Diego Union*, at p. 955.)

When a legislative body of a local agency is engaged in labor negotiations with a current or prospective employee, section 54957.6, subdivision (a) allows "closed sessions with the local agency's designated representatives regarding the salaries, salary schedules, or compensation paid in the form of fringe benefits of its represented and unrepresented employees . . ." so long as (1) the legislative body holds "an open and public session in which it identifies its designated representatives," (2) the closed sessions are "for the purpose of reviewing its position and instructing the local agency's designated representatives," and (3) the closed sessions do "not include final action on the proposed compensation of one or more unrepresented employees." Closed sessions regarding such negotiations "may take place prior to and during consultations and discussions with representatives of employee organizations and unrepresented employees" and "may include discussion of an agency's available funds and funding priorities, but only insofar as these discussions relate to providing instructions to the local agency's designated representative." (§ 54957.6, subd. (a).) The legislative body may appoint one or more of its members, constituting less than a quorum of the board, to act as its designated representative(s) in such negotiations. (57 Ops.Cal.Atty.Gen.209, 212 (1974) [1974 Cal. AG LEXIS 51, *9.) It may not meet in closed session to decide its strategy for a bargaining position if it does not designate a representative to act as negotiator. (*Id.* at p. 210 [*5].)

"Section 54960.1, subdivision (a) provides that an interested person may sue the legislative body of a local agency by mandamus or injunction to

10

determine whether an action taken by that body violated certain provisions of the Act, and as a consequence is null and void. Section 54960.1 limits its remedy to actions that violated the Act's mandate for open and public meetings (§§ 54953, 54956, 54956.5) and its agenda posting requirements (§§ 54954.2, 54954.5, 54954.6)." (*Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 517.) "To prevail, the plaintiff must show: (1) the local legislative body violated one or more [ ] Brown Act provisions; (2) the legislative body took action in connection with the violation; (3) a timely demand for the legislative body to cure or correct the improper action; (4) the legislative body did not cure or correct the action; and (5) prejudice from the [ ] Act violation." (*Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 601.)

B.     *Application*

There is evidence to support the inference drawn by the trial court that the board had to have engaged in discussions regarding compensation in closed session meetings prior to the March 7, 2017 open meeting. After Phelps was identified as a finalist, she negotiated a draft agreement with attorney Sims and board member Zane that included compensation terms which Phelps understood the board was comfortable offering. Three board members stated the discussions in the closed session meetings on January 31 and February 14, 2017 were limited to providing direction to the negotiators. These discussions did not comply with the safe harbor provisions of section 54957.6 because the agendas did not properly identify the board representatives. Therefore, there was a violation of the Brown Act.

What is less clear from the record is whether the board took "action" in connection with the violation. (*Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1118 [section 54960.1, subd. (a) requires an "action taken

11

by a legislative body" before it can be found null and void].) Three board members stated that no final action on compensation was taken prior to the March 7, 2017 meeting. O'Connor-Ratcliff and Patel both declared they did not see the final draft contract until it was publicly posted with the agenda for the March 7, 2017 meeting. However, we defer to the inferences drawn by the trial court from the evidence that "compensation had to have been discussed with and/or approved by a majority of the [b]oard prior to that meeting." (*Fowler*, *supra*, 46 Cal.App.5th at p. 366; § 54952.6[4]].)

1.    *A Showing of Prejudice Is Required*

Brown Act violations do not necessarily require nullification or invalidation of an agency action. "We do not set aside an agency's action unless the appellant[ ] show[s] the violation caused prejudice. (*Fowler*, *supra*, 46 Cal.App.5th at p. 371.) This rule requiring a showing of prejudice "has been consistently stated in cases construing the Brown Act and analogous law." (*Ibid*.)

SDOG tries to distinguish this case from the long line of cases establishing a prejudice requirement by asserting that cases where courts have found no prejudice involved challenged actions "directed at the plaintiffs personally, their property, or their property rights." Certainly, some cases involve individuals asserting Brown Act violations related to their own personal interests. (See *Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 671 [no prejudice from public comments regarding a

---

4    Section 54952.6 defines " 'action taken' " as "a collective decision made by a majority of the members of a legislative body, a collective commitment or promise by a majority of the members of a legislative body to make a positive or negative decision, or an actual vote by a majority of the members of a legislative body when sitting as a body or entity, upon a motion, proposal, resolution, order or ordinance."

possible tax sale given "the long history" of an assessment dispute and litigation where both parties were "well aware of the other side's position]; *North Pacifica LLC v. California Costal Com.* (2008) 166 Cal.App.4th 1416, 1433–1434 [failure to comply with 10-day notice requirement of analogous Bagley-Keene Open Meeting Act was not prejudicial because the project developer who raised the violation could not have changed the outcome].) As the District points out, it is not surprising that many Brown Act cases are brought by individuals with a personal interest in an agency decision. But we do not believe the rule can be so easily cabined.

In *Cohan v. City of Thousand Oaks* (1994) 30 Cal.App.4th 547, the court determined the city council violated the Brown Act by voting to waive the 72-hour notice provision of the Brown Act and amending the agenda during a meeting to consider appealing a decision by the city's planning commission that approved a large housing development. (*Id.* at pp. 552–553, 555.) The *Cohan* court stated, however, that "violations of the Brown Act do not invalidate a decision. [Citation.] Appellants must show prejudice." (*Id.* at p. 556.) The court concluded there was no prejudice, not only to the developer, but also to the public. The court noted that only a few individuals appeared at the subsequent properly noticed appeal hearing to show support for the project as compared to a large number of opponents. The court concluded, therefore, that it was "highly unlikely" more people would have attended the meeting where the decision to appeal was made if there were no violation. (*Ibid.*)

The *Fowler* case involved a challenge to a city's approval of an application to build a tennis cabaña on residential property. The city violated the Brown Act by considering a litigation threat related to the project in closed sessions without making information related to the threat available to

13

the public as part of the agenda materials. (*Fowler, supra*, 46 Cal.App.5th at pp. 364–365, 370.) Nevertheless, the appellate court determined there was no showing of prejudice because the application for approval of the project was fully considered by the mayor and members of the city council at four open meetings where they heard public comments both in favor of and in opposition to the project. The court concluded there was no reasonable argument that the plaintiffs in that case "lacked a fair opportunity to present their case, that the [c]ity failed to consider it fully, or that plaintiffs would have achieved a more favorable result if they had known the [c]ity [c]ouncil was also considering the litigation threat in closed session." (*Id*. at pp. 372–373.) Although this case involved a dispute about a specific property, the prejudice holding considered the impact on the surrounding community and the opportunity for public comments on both sides.

The *Fowler* court rejected an argument that prejudice is not required by the language of section 54960.1 before an action taken can be declared null and void. "Had the Legislature intended that result, we assume it would have chosen different language." (*Fowler, supra*, 46 Cal.App.5th at p. 372.) The *Fowler* court pointed to section 54957 subdivision (b)(2) where the statute provides that if notice is not properly given to an employee "any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void." No such language is included in section 54957, subdivisions (b)(1) or (4) involving closed session meetings regarding matters other than employee discipline or dismissal. Had the Legislature intended to eliminate the prejudice requirement for these matters, it knew how to craft such language.

14

We do not agree that a showing of prejudice for violations of the personnel exception would defeat the purpose of the Brown Act. Where, for example, Brown Act violations result in no opportunity for public comment or opposition a plaintiff may establish prejudice. (See *Hernandez v. Town of Apple Valley* (2017) 7 Cal.App.5th 194, 208–209 [failure to post sufficient information on an agenda gave the public no notice or opportunity to speak about an important issue]; *Sounhein v. City of San Dimas* (1992) 11 Cal.App.4th 1255, 1260–1261 [residents affected by a proposed ordinance were not given proper notice and an opportunity to be heard about a zoning ordinance].) Where notice and opportunity to be heard is given before an agency takes final action on a personnel matter, a plaintiff could establish prejudice from prior alleged Brown Act violations by appearing at the hearing to make a record of any violations and pointing out how public input on the matter could or should change the agency's final action.

2.      *SDOG Did Not Establish Prejudice*

In this case, the record establishes that even though the board did not meet the requirements of the Brown Act in negotiating Phelps's compensation, the District provided the public with ample notice to allow anyone who wished to comment on or oppose her hiring or aspects of her contract by the time of the public meeting on March 7, 2017. The District identified Phelps as a finalist for the position of superintendent in mid-February by sending messages to the school community and in publishing information about her on social media, and news releases. These notices not only identified Phelps, but provided information about her employment background, including the public school district where she was then employed. These messages also informed the public that she would become the superintendent only after her contract was approved at a public meeting

15

on March 7, 2017.  Well in advance of the public meeting, the District published Phelps's proposed contract along with the meeting agenda.  Any member of the public could have researched her public compensation history or that of other public school district superintendents to compare with her proposed contract.

SDOG agreed that, despite this information, no member of the public opposed the appointment of Phelps or her contract on March 7, 2017.  Board member Sellers only made a broad statement that he thought they could make a better hire for less money.  He did not raise specific objections to the contract or to Phelps's compensation.  Nor did he mention how public input regarding compensation earlier in the process could have changed the outcome.

As the trial court pointed out, SDOG was aware of the prospective appointment of Phelps, as evidenced by its letters alleging procedural violations of the Brown Act.  If it had concerns about Phelps's qualifications or her compensation, a member of SDOG could have appeared at the meeting to speak in opposition or to point out how further public involvement in negotiation of any aspect of Phelps's contract was necessary.  No one did so.  SDOG waited until after the District took final action to initiate this litigation.

SDOG cites our decision in *Page v. MiraCosta Community College Dist*. (2009) 180 Cal.App.4th 471 for the proposition that subsequent action in an open session approving prior conduct in closed session does not cure the agency's violations of the Brown Act.  In that case, the agency engaged in closed session meetings with a mediator to settle litigation.  We determined the subsequent action in open session "did not establish a cure" for "impermissibly conducting information gathering in the course of mediating

16

and negotiating" which fell outside of the Brown Act's litigation exception. (*Id*. at pp. 505–506.) This case is inapposite because it did not consider the issue of prejudice or the issue of employment negotiations such as those presented here.

Here, there was adequate notice of both the identity of a prospective public employee and a proposed contract well in advance of the final action on a contract but no member of the public opposed the contract. Under these circumstances, we conclude the trial court did not err in determining there was no prejudice from any Brown Act violations.

## DISPOSITION

The judgment is affirmed. The District shall recover its costs on appeal.

McCONNELL, P. J.

WE CONCUR:


AARON, J.


BUCHANAN, J.

17