[No. H026628. Sixth Dist. Jan. 28, 2005.]

ROBERTO MORENO, Plaintiff and Respondent, v.
CITY OF KING et al., Defendants and Appellants.

---

### COUNSEL

David Michael Fleishman for Defendants and Appellants.

Michelle A. Welsh for Plaintiff and Respondent.

---

### OPINION

**MIHARA, J.**—The trial court granted plaintiff Roberto Moreno's petition for a writ of mandate after it found that defendant City of King's termination of Moreno's employment as the City of King's finance director was null and void because it had occurred in a manner that violated the Brown Act, California's open meeting law. (Gov. Code, § 54950.5 et seq.) On appeal, City of King (the City) asserts that the trial court erred in finding that it violated the Brown Act and in finding that it had not "cured" any violations. Defendant Keith Breskin, the City's city manager, claims that the trial court erred in granting Moreno's motion to tax some of his costs. We reject these contentions and affirm the trial court's judgment.

## I. Factual Background

The City's municipal code (the code) provides that "[t]he city manager shall take his orders and instructions from the city council only when sitting in a duly held meeting of the city council . . . ." Under the code, the finance director "shall be appointed by and serve at the pleasure of the city council."

The City's City Council (the Council) held a special meeting on October 17, 2002. The agenda for this meeting stated that the only item that would be considered by the Council at the meeting would be a closed session consideration of: "Per Government Code Section 54957: Public Employee (employment contract)." Moreno was not notified that his employment would be discussed at the October 17, 2002 meeting. The minutes from this meeting stated that there was "no reportable action taken in closed session."[1]

At about 7:45 a.m. on October 23, 2002, Breskin gave Moreno a copy of a two-page memorandum that contained the details of five alleged incidents of Moreno's misconduct that had led Breskin to the decision to terminate Moreno's employment as finance director for the City. The termination was effective that day at 5:00 p.m. Moreno was not given an opportunity to respond to the accusations in Breskin's memorandum.

In December 2002, Moreno filed a tort claim with the City for wrongful termination. Moreno stated in his claim, among other things, that the City had violated the Brown Act by failing to notify him that the Council would be considering "his employment or any complaints or charges against him" and by failing to indicate in its "agendas and minutes" that action to terminate his employment would be considered or had been taken. On January 15, 2003, Moreno's attorney sent a letter to the City demanding that it "cure or correct the action taken by the City Council on October 17, 2002 in violation of the Brown Act." The letter referenced the Brown Act violations identified in the tort claim.

The agenda for the Council's January 28, 2003 meeting included the following item on the "CONSENT AGENDA." "DENY Tort Claim of Roberto Moreno, *Claimant v. City of King*. [¶] Roberto Moreno has filed a claim against the City for unspecified monetary damages with respect to his termination from the position of Finance Director. The City Attorney has reviewed the issues raised in the claim and has not found any grounds in support of the claim. **Recommendation**: Re-affirm its concurrence in and approval of the City Manager's termination of Mr. Moreno as the City's Finance Director and deny Mr. Moreno's government tort claim. See Addendum, pg 91." The Addendum contained a two-page "STAFF REPORT" prepared by the City Attorney. This document briefly noted that Moreno claimed that the City had "not properly and adequately noticed [its consider-

---

[1] Breskin testified at trial that he met with the Council again after the Council's regular October 22 meeting and "reminded" the Council of Moreno's pending termination. The Council did not disapprove of his action. This matter was not on the October 22 agenda.

ation of his termination] under the Brown Act." It then stated that this claim was "based on an inaccurate understanding of the facts . . . and of the applicable legal standard." The document contained the same recommendation in the same language as the agenda. The minutes of the January 28, 2003 meeting stated that the Council had decided to "DENY Tort Claim of Roberto Moreno, *Claimant v. City of King*."

## II.  Procedural Background

In February 2003, Moreno filed a petition for a writ of mandate alleging that the City had violated Government Code sections[2] 54954.2, 54954.5, 54957, subdivision (b) and 54957.1 in terminating his employment.[3] He also alleged that the City had failed to cure any of these violations upon his demand. Moreno sought a writ declaring his termination null and void. He also sought damages, attorney's fees and costs.

Moreno claimed that the City had violated the Brown Act in three ways: (1) the inadequacy of the agenda violated sections 54954.2 and 54954.5; (2) the failure to report the action taken on Moreno's employment at the meeting violated section 54957.1; and (3) the failure to notify Moreno in advance of the meeting that the Council would be hearing "complaints or charges" against him violated section 54957. Moreno insisted that the City had not cured any of the violations at the January 28, 2003 meeting. The City claimed that no complaints or charges had been heard by the Council at the October 17, 2003 meeting and that it had cured any other Brown Act violations at the Council's January 28, 2003 meeting.

The City chose to present testimony at an evidentiary hearing regarding "what happened at that meeting."[4] Breskin testified that the subject of the October 17, 2003 meeting was a prospective "public employee contract" with Hector Lwin for Lwin to serve as "Interim finance director." Breskin understood that "as a result of the action taken on that employee contract . . . [he] had the approval of the city council to terminate Mr. Moreno's employment." Breskin also testified that the Council approved of Moreno's termination at the October 17, 2003 meeting.

---

[2] Subsequent unspecified statutory references are to the Government Code.

[3] Moreno also alleged that the City had violated the Public Records Act and deprived him of due process. Those claims were denied by the trial court and are not at issue in this appeal.

[4] Moreno testified that he was not present at the October meeting and did not know what happened at that meeting. The City did not object to cross-examination of Breskin about what had taken place during the October 17, 2003 closed session. The City only objected to the admission of evidence of the content of statements made by Council members during the closed session. No such statements were admitted into evidence.

Breskin conceded that Moreno was terminated as a "disciplinary action," and he admitted that, at the October 17 meeting, he provided the Council with a draft of the memorandum containing the details of his five complaints about Moreno's conduct that he was proposing to give to Moreno. Yet he asserted, "I did not discuss that [memorandum] with them on October 17th." Breskin reluctantly admitted that, in response to the memorandum, the councilmembers discussed Moreno and the termination of his employment. Breskin testified that "25 to 30 percent" of the "30 to 45 minutes" of the October 17 meeting were devoted to discussing Moreno.

On May 14, 2003, the trial court issued a written ruling granting Moreno's petition with respect to the Brown Act violations. The court found that the City had violated sections 54954.2, 54954.5, 54957 and 54957.1 and had not cured any of these violations. The court declared the Council's action terminating Moreno "null and void," ordered the City to reinstate him and reserved the issues of damages, attorney's fees and costs.

On June 3, 2003, the court issued a judgment that reserved the amounts of damages, fees and costs, but stated that Moreno was entitled to recover his damages, fees and costs from the City and Breskin was entitled to recover his costs from Moreno. On July 28, 2003, a writ issued commanding the City to reinstate Moreno.[5]

On August 22, 2003, Breskin filed a memorandum of costs seeking recovery of his filing and motion fees and one-half of the costs collectively incurred by himself and the City for depositions and service of process.

On August 29, 2003, the court issued a written ruling awarding Moreno $7,520.93 in monetary damages, additional relief with respect to health insurance premiums and retirement, an unspecified amount of costs and $10,000 in attorney's fees.

On September 3, 2003, Moreno filed a motion to tax Breskin's costs. Moreno asserted that Breskin had not incurred any of the claimed costs; instead these were costs incurred by the City. Moreno also argued that Breskin was not a prevailing party, and alternatively that Breskin was not entitled to recover deposition and process costs because it was not necessary for him to incur such costs, as the City needed the depositions and service regardless of Breskin.

---

[5] The City filed a return stating that it had complied with the writ by terminating Moreno's employment prior to issuance of the writ at a properly noticed public meeting.

On October 17, 2003, the court heard and granted Moreno's motion to tax Breskin's claimed process and deposition costs. That same day, the City and Breskin filed a notice of appeal that specified that it was from the court's "June 3, 2003" judgment.

On October 21, 2003, the court issued an "AMENDED JUDGMENT." The amended judgment included further explanation regarding reimbursement for health insurance premiums and retirement contributions and credits. In addition, the amended judgment specified that Moreno's recoverable costs were $1,630.53 and Breskin's recoverable costs were $306.60.

On November 4, 2003, the City and Breskin filed an amended notice of appeal that stated that it was from both the "June 3, 2003 [judgment] and the purported amended judgment . . . [of] October 21, 2003 . . . ." The City and Breskin did not request a reporter's transcript of the October 17, 2003 hearing, and no such transcript appears in the appellate record before us.

## III. Analysis

The City claims that (1) the agenda for the October 17 meeting adequately described the subject matter of the meeting, (2) the Council did not hear complaints or charges at that meeting and (3) it took no reportable action at that meeting. Breskin claims that he was erroneously denied his costs.

### A. The Statutes

"At least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda containing *a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session.* A brief general description of an item generally need not exceed 20 words. . . . [¶] No action or discussion shall be undertaken on any item not appearing on the posted agenda, except [exceptions that are inapplicable here]." (Gov. Code, § 54954.2, subd. (a), italics added.)

"A special meeting may be called at any time by the presiding officer of the legislative body of a local agency, or by a majority of the members of the legislative body, by delivering written notice to each member of the legislative body and to each local newspaper of general circulation and radio or television station requesting notice in writing. The notice shall be delivered

personally or by any other means and shall be received at least 24 hours before the time of the meeting as specified in the notice. *The call and notice shall specify* the time and place of the special meeting and *the business to be transacted or discussed.* No other business shall be considered at these meetings by the legislative body." (Gov. Code, § 54956, italics added.)

"For purposes of describing closed session items pursuant to Section 54954.2, the agenda may describe closed sessions as provided below. No legislative body or elected official shall be in violation of Section 54954.2 or 54956 if the closed session items were described in substantial compliance with this section. Substantial compliance is satisfied by including the information provided below, irrespective of its format. [¶] . . . [¶] (e) With respect to every item of business to be discussed in closed session pursuant to Section 54957: [¶] . . . [¶] PUBLIC EMPLOYEE APPOINTMENT [¶] Title: (Specify description of position to be filled) [¶] PUBLIC EMPLOYMENT [¶] Title: (Specify description of position to be filled) [¶] PUBLIC EMPLOYEE PERFORMANCE EVALUATION [¶] Title: (Specify position title of employee being reviewed) [¶] PUBLIC EMPLOYEE DISCIPLINE/DISMISSAL/RELEASE [¶] (No additional information is required in connection with a closed session to consider discipline, dismissal, or release of a public employee. Discipline includes potential reduction of compensation.)" (Gov. Code, § 54954.5)

"(b)(1) Subject to paragraph (2), nothing contained in this chapter shall be construed to prevent the legislative body of a local agency from holding closed sessions during a regular or special meeting to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee or to hear complaints or charges brought against the employee by another person or employee unless the employee requests a public session. [¶] (2) As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session. If notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void." (Gov. Code, § 54957.)

"Action taken to appoint, employ, dismiss, accept the resignation of, or otherwise affect the employment status of a public employee in closed session pursuant to Section 54957 shall be reported at the public meeting during

which the closed session is held. Any report required by this paragraph shall identify the title of the position. The general requirement of this paragraph notwithstanding, the report of a dismissal or of the nonrenewal of an employment contract shall be deferred until the first public meeting following the exhaustion of administrative remedies, if any." (Gov. Code, § 54957.1.)

## B.  The Agenda

The City argues that the trial court erred in finding that it had violated section 54954.2.

■  First, the City asserts that a "special" meeting agenda need not comply with section 54954.2 because that statute applies only to "regular" meetings. Under section 54954.2, an agenda must be posted 72 hours before a "regular" meeting. The agenda must "contain[] *a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session.*" (Gov. Code, § 54954.2, subd. (a), italics added.) Section 54956 permits "special" meetings to be held on just 24 hours' notice. The written notice must "*specify . . . the business to be transacted or discussed.*" (Gov. Code, § 54956, italics added.) Both statutes prohibit the discussion of any business not identified in the agenda or notice. (Gov. Code, §§ 54954.2, 54956.)

■  We do not understand section 54956 to allow a City to omit the "brief general description" required by section 54954.2. Section 54956 requires the notice to "*specify . . .* the business to be transacted or discussed." Section 54954.2 requires the agenda to give "*a brief general description* of each item of business to be transacted or discussed" (italics added). The word "specify" means "to name or state explicitly or in detail" (italics added). (Webster's Collegiate Dict. (10th ed. 1993) p. 1129.) We cannot conceive of how a city could "specify" an item of business without providing a "brief general description" of that item of business. In our view, section 54956's requirement that the notice "specify" is intended to refer back to section 54954.2's requirement that an agenda provide a "description." Since the two statutes contain equivalent requirements, the trial court's finding that the special meeting agenda violated section 54954.2 was equivalent to a finding that it violated section 54956.

■  Second, the City argues that the trial court erred in finding that the agenda was not an adequate specification or description of the business that was transacted at the October 17 meeting. The agenda described the business as "Public Employee (employment contract)." It was undisputed that at least

a quarter of the meeting was actually devoted to a discussion of Moreno and whether to terminate him based on Breskin's memorandum. The agenda's description provided no clue that the dismissal of a public employee would be discussed at the meeting. The City argues that further specification would have violated Moreno's privacy rights. Not so. As section 54954.5 illustrates, an agenda that said simply "Public Employee Dismissal" would have provided adequate public notice of a closed session at which the Council would consider Moreno's dismissal. (Gov. Code, § 54954.5.) While it is true that section 54954.5 does not provide the exclusive means of compliance with agenda specification requirements, it demonstrates that the City could have protected Moreno's privacy while properly agendizing the Council's consideration of his dismissal. The trial court did not err in finding that the agenda was inadequate.

■ The City also contends that it cured any agendizing violation in January 2003. Where a person alleges that a legislative body has violated "Section 54953, 54954.2, 54954.5, 54954.6, 54956, or 54956.5," the person is required to demand a cure, and the person cannot succeed in an action based on the alleged violation if the legislative body cures the violation. (Gov. Code, § 54960.1.)

Moreno made a timely demand for a cure in January 2003 when he asked the City to cure its failure to indicate in its "agendas and minutes" that action to terminate his employment would be considered at the Council's October 17 meeting.[6] The agenda for the Council's January 28, 2003 meeting only referenced Moreno's tort claim, and the only action reported after that meeting was the denial of his tort claim. This did not achieve a cure of the City's failure to agendize the issue of Moreno's dismissal. The trial court did not err in finding that the City had failed to cure the agendizing violation.

## C. Complaints or Charges

The City maintains that the trial court erred in finding that it violated section 54957, subdivision (b)(2) by failing to give Moreno advance notice that it would be "holding a closed session on specific complaints or charges" brought against him by Breskin. The City claims that "there is nothing in the record to support the trial court's conclusion that complaints or charges were heard in the closed session on October 17, 2002."

---

[6] The City criticizes the letter demanding a cure because it did not itemize the violations. However, the letter clearly and adequately referenced the itemized violations alleged in the tort claim. We find no ambiguity or inadequacy in Moreno's cure demand.

■ The critical question is whether the Council heard "complaints or charges" at the meeting. Consideration of an *employee performance evaluation* does not amount to a hearing of *complaints or charges* because "[p]erformance evaluations conducted in the due course of [public agency] business are not in the nature of an accusation and are not normally thought of as being 'brought *against* the employee.' " (*Furtado v. Sierra Community College* (1998) 68 Cal.App.4th 876, 879–880, 882–883 [80 Cal.Rptr.2d 589], italics added [advance notice not required where Board discussed performance evaluation in closed session and voted not to renew employee's contract].) Simply considering whether to dismiss an employee, where the dismissal is not based on accusations of misconduct, does not amount to a hearing of "complaints or charges" and therefore does not require advance notice to the employee. (*Fischer v. Los Angeles Unified School Dist.* (1999) 70 Cal.App.4th 87, 97–100 [82 Cal.Rptr.2d 452].) And where complaints or charges have already been heard and sustained at a public evidentiary hearing, a public agency may hold a closed session to consider whether to discipline or dismiss the employee without giving the employee advance notice. (*Bollinger v. San Diego Civil Service Com.* (1999) 71 Cal.App.4th 568, 571, 574–575 [84 Cal.Rptr.2d 27].)

■ On the other hand, a public agency that receives accusations of misconduct and considers whether to dismiss an employee based on those accusations must give advance notice to the employee because its actions do amount to a hearing of "complaints or charges." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 683–684 [98 Cal.Rptr.2d 263]; see also *Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860 [132 Cal.Rptr.2d 453].) In *Bell*, the Board considered written allegations of misconduct against an employee and decided to discipline the employee based on those allegations without giving him advance notice. The Court of Appeal upheld the trial court's finding that the Board had heard "complaints or charges" without advance notice in violation of section 54957. (*Bell* at pp. 683–684.)

The record before the trial court here amply supports its finding that the Council heard complaints or charges against Moreno at its October 17 meeting. Breskin testified that he presented to the Council a document containing the details of his five accusations of misconduct against Moreno and sought the Council's approval of Moreno's termination. Although Breskin insisted *he* did not discuss the contents of the document *with the Council*, he admitted that *the Council* responded to the document by spending a significant portion of the meeting discussing Moreno and his potential

termination. The trial court could reasonably infer from this testimony that the Council considered and discussed Breskin's accusations against Moreno and that this amounted to a hearing of "complaints or charges" within the meaning of section 54957. The document was not a performance evaluation but instead contained details of five specific accusations of misconduct. Moreno was not given the opportunity to respond to these accusations. The purpose of section 54957 is to provide an employee with the opportunity to respond to specific accusations made by another person. (*Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs., supra,* 107 Cal.App.4th at p. 875.) The trial court did not err in concluding that Moreno had been deprived of that opportunity in violation of section 54957 because the City failed to give him advance notice that it would be hearing Breskin's accusations at its October 17 meeting.

■ The cure provisions of section 54960.1 do not apply to a violation of section 54957. When there has been a failure to give an employee advance notice of a hearing on specific complaints or charges, "any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void." (Gov. Code, § 54957.) The trial court's finding is supported by the record, and the remedy imposed by the court was mandated by section 54957.

## D. Reportable Action

The City asserts that the trial court erred in finding that it violated section 54957.1. It argues that it was not required to report out the action taken on October 17 by the Council to terminate Moreno's employment because the termination approval occurred in closed session and was not put into action until the following week when Breskin informed Moreno of his termination. While this assertion does not explain why the City *never* reported the action taken by the Council, we need not consider this issue because the relief granted by the trial court was not based on the court's finding that the City violated section 54957.1. The court's finding that the City violated *section 54957* mandated that the court declare the City's action terminating Moreno's employment null and void. All of the relief granted by the trial court to Moreno followed from the court's declaration that the City's action was null and void. As it is irrelevant whether the City also violated section 54957.1, we decline to address the City's contention that the court erred in so finding.

## E. Costs

Breskin contends that the trial court erred in granting Moreno's motion to tax his costs.[7]

Breskin and the City filed all of their pleadings in this case collectively and were represented by the same attorney. Breskin sought to recover as costs his filing and motion fees of $306.60 plus one-half of the costs collectively incurred by himself and the City for depositions and service of process. Moreno filed a motion to tax Breskin's costs in which he argued, among other things, that Breskin was not entitled to recover deposition and process costs because it was not necessary for him to incur such costs, as the City needed the depositions and service regardless of Breskin. Breskin has chosen not to provide us with a transcript of the hearing at which the court granted Moreno's motion, so we have no idea what was presented to the court at that hearing. All we know is that after that hearing the court amended the judgment to provide that Breskin's recoverable costs were $306.60.

■ The question is whether the trial court erred in ruling that Breskin was not entitled to recover the deposition and process costs that the City incurred on both its and Breskin's behalf. Deposition costs are recoverable by a prevailing party as a matter of right if they were "necessary depositions." (Code Civ. Proc., §§ 1032, 1033.5, subd. (a)(3).) The amount "actually incurred" for process costs is also recoverable by a prevailing party as a matter of right. (Code Civ. Proc., §§ 1032, 1033.5, subd. (a)(4).) As noted above, Breskin has provided us with a record that is silent with regard to why the trial court taxed his deposition and process costs. ■ "A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) On the record before us, we must presume that the trial court was presented with a sound basis at the hearing on the motion to support its implied findings that Breskin had not "actually incurred" process costs and had not needed to conduct any depositions. Breskin has failed to affirmatively demonstrate error.

---

[7] Breskin "assumes" that the trial court denied him *all* of his costs even though the trial court's amended judgment awarded him $306.60 in costs. His convoluted explanation for this assumption is unpersuasive. Breskin claims that the trial court lost jurisdiction when he filed his original notice of appeal prior to the amended judgment. However, Breskin's original notice of appeal was solely from the June judgment that awarded him costs but did not set the amount. He could hardly have premised a claim of error in denying him costs on a judgment that unambiguously awarded him his costs but did not set the amount of costs. His amended notice of appeal was filed after the amended judgment was filed. The amended judgment awarded him $306.60 in costs. Consequently, the only issue on appeal is whether the court erred in awarding him only $306.60 in costs rather than the higher amount that he sought in his memorandum of costs.

## IV.  Disposition

The judgment is affirmed.

Rushing,  P. J., and Elia, J., concurred.