Filed 3/22/23  Thanawalla v. Bd. of Ed. for the Santa Monica Malibu USD CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANN MAGGIO THANAWALLA,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>BOARD OF EDUCATION FOR THE SANTA MONICA MALIBU UNIFIED SCHOOL DISTRICT,<br><br>     Defendant and Respondent. | B318341<br><br>(Los Angeles County Super. Ct. No. 20STCV18799) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Jeff Lewis Law, Jeffrey Lewis, and Sean C. Rotstan for Plaintiff and Appellant.

Fagen Friedman & Fulfrost, Jessica E. Ehrlich, and Lynn M. Beekman for Defendant and Respondent.

_____

Ann Maggio Thanawalla sued the Board of Education for the Santa Monica Malibu Unified School District (SMMUSD) alleging that the board violated the Ralph M. Brown Act (Gov. Code, § 54950 et seq.) by posting an agenda for the board's March 5, 2020 meeting that did not adequately describe an agenda item. Shortly after the March 5 meeting, the Governor issued executive orders addressing COVID-19 that affected Brown Act requirements for public meetings. Thanawalla filed a first amended complaint (FAC)—the operative complaint in this action—alleging violations of the Brown Act as affected by the Governor's executive orders.

The board moved for, and the trial court granted, summary judgment. Pertinent to Thanawalla's arguments here, the trial court concluded that the description of the challenged agenda item for the March 5, 2020 board meeting substantially complied with the Brown Act's notice requirements and that SMMUSD had instituted practices to deal with the other issues Thanawalla had raised that rendered Thanawalla's lawsuit moot.

On appeal, Thanawalla contends that the only way to moot a Brown Act lawsuit is through "unconditional commitment." She also argues that "the existence of substantial compliance with the Brown Act is a factual question" that cannot be determined on summary judgment.

We disagree with Thanawalla's contentions and will affirm the trial court's judgment.

## BACKGROUND

### A. March 5, 2020 School Board Meeting Agenda

On February 28, 2020, SMMUSD posted an electronic version of the agenda for the March 5, 2020 school board meeting

on its Web site. The agenda included item J 4: "4. TIME CERTAIN 7 p.m. – Approval of the 2019-20 Second Interim Report (60 min)." The agenda posted on February 28, 2020 also contained a detailed summary of the agenda item that, under the heading "Recommended Motion," stated, "It is recommended that the Board of Education approve the 2019-20 Second Interim Report and the corresponding budget adjustments." The agenda also contained a heading entitled "Rationale," that explained: "Education Code (EC) Sections §35035 (g), §42130, and §42131 require the governing board of each local educational agency (LEA) to certify at least twice a year as to the LEA's ability to meet its financial obligations for the remainder for that fiscal year and for the subsequent two fiscal years. [¶] The 2019-20 First Interim Budget was adopted by the Board of Education on December 12, 2019, and was approved by the Los Angeles County Office of Education (LACOE). [¶] This Second Interim Report reflects changing conditions that have necessitated adjusting the District budget."

The agenda was text-searchable using either a keyword search tool or the CTRL + F search function.

The district posted supporting materials for agenda item J 4 on March 3, 2020.

The board met on March 5, 2020. Thanawalla and another member of the public addressed the board regarding agenda item J 4. The board then voted to approve the report, consistent with the recommendation on the agenda.

Before the March 5, 2020 board meeting, the agenda for the meeting was accessible on the district's Web site by clicking on the "Board of Education" tab at the top of the district's home page. That tab linked to "Board Meetings," which linked to

3

"Agendas," where anyone accessing the district's Web site could find the March 5, 2020 agenda. The following week—on or before March 11, 2020—the district installed on its home page a direct link to the most current board meeting agenda.

## B. COVID-19 and Public Attendance and Comment at Board Meetings

On March 17, 2020, Governor Newsom signed Executive Order N-29-20. It stated, in pertinent part, that "[A] local legislative body or state body is authorized to hold public meetings via teleconferencing and to make public meetings accessible telephonically or otherwise electronically to all members of the public seeking to observe and to address the local legislative body or state body. All requirements in both the Bagley-Keene Act and the Brown Act expressly or impliedly requiring the physical presence of members, the clerk or other personnel of the body, or of the public as a condition of participation in or quorum for a public meeting are hereby waived." (Governor's Exec. Order No. N-29-20 (Mar. 17, 2020).) The Executive Order continued: "A local legislative body or state body that holds a meeting via teleconferencing and allows members of the public to observe and address the meeting telephonically or otherwise electronically . . . shall have satisfied any requirement that the body allow members of the public to attend the meeting and offer public comment. Such a body need not make available any physical location from which members of the public may observe the meeting and offer public comment." (*Ibid.*) The order concluded: "All state and local bodies are urged to use sound discretion and to make reasonable efforts to adhere as closely as reasonably possible to the provisions of the Bagley-Keene Act and the Brown Act, and other appliable local laws

4

regulating the conduct of public meetings, in order to maximize transparency and provide the public access to their meetings." (*Ibid.*)

As part of its COVID-19 mitigation efforts, the district shifted its board meetings to Zoom. The Zoom software requires users to display an identifier. It does not require that the identifier be the user's real name. Additionally, the district has provided instructions for public comment at Zoom meetings that include a Google survey that requests identifying information so that the board can identify which Zoom participant needs to be unmuted when it is that person's time to comment. The Google survey does not require an individual to provide their real name. The district has since also offered dial-in telephonic conferencing for those who wish to participate that way, as well.

### C. Thanawalla's April 3, 2020 Email

On April 3, 2020, Thanawalla sent an email to the board with a subject line that read: "March[ ] 5 Brown Act Violation Notice."[1] The email alleged that the board had violated the Brown Act by "failing to post 'an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting . . . ,'" by failing to post the agenda on the district's home page "through a prominent, direct link to the current agenda," by failing to post an agenda that was text searchable, and by failing to post agendas on the district's Web site in reverse chronological order. The email alleged that the "public raised the Brown Act violations both prior to the meeting via emails and at the meeting during public comment," and asked the board to refrain from taking action on agenda item J 4. The

---

[1] The email purported to be dated April 2, 2020, but indicates that it was sent on the afternoon of April 3, 2020.

email demanded that the district "cure and correct" the alleged Brown Act violations by withdrawing the second interim report that it approved in agenda item J 4, and take certain other actions within 30 days of the date of the email.

On May 14, 2020, Thanawalla's attorney attached the email to a letter and mailed it to the board's secretary.

Thanawalla filed her original complaint in this matter on May 18, 2020. The complaint alleged violations of the Brown Act based on the district's alleged failure to adequately describe item J 4 on the March 5, 2020 agenda, the alleged failure to post a link to the agenda directly from the district's home page, the alleged failure to post an agenda that was text searchable, and the alleged failure to post agendas on the district's Web site in reverse chronological order.

### D. Thanawalla's August 20, 2020 Letter

On August 20, 2020, Thanawalla's attorney sent the board secretary another letter. This letter purported to be a notice regarding "Continuing Brown Act Violations / Cease and Desist Letter." This letter alleged what it referred to as "continuing" or ongoing violations of the Brown Act, and listed what it termed examples of the violations.

The letter alleged that the Brown Act "requires that agendas contain a brief description of each item to be discussed by the Board," for example, and then alleged that the "Board routinely does not include the action proposed to be taken. By way of example," the letter alleged, "the March 5, 2020 agenda had an agenda item called 'Second Interim Report,' but did not include the word budget. As a result, the public had no way of knowing that the Board was going to vote about the budget. This happens routinely."

6

Similar to the allegations in Thanawalla's April 3, 2020 email, the letter also alleged that the board "routinely" fails to post agendas through a prominent direct link on the district home page, fails to post agendas that contain "a brief general description of each item of business to be transacted or discussed at the meeting," fails to provide "retrievable, downloadable, indexable, and electronically searchable" agendas.

The August 20, 2020 letter also included allegations that Thanawalla's April 3, 2020 email did not. The August 20, 2020 letter alleged that the board failed to post agendas 72 hours before meetings because materials supporting agenda items were posted less than 72 hours before meetings.

The August 20, 2020 letter also alleged that the steps the board had taken to respond to the COVID-19 pandemic and the Governor's executive orders also violated the Brown Act because the public could not participate by telephone, but rather was required to "download Zoom and complete a Google Survey." The letter argued that "[t]he Board needs to institute a telephone access or a non-Zoom method for members of the public to participate in order to comply with the Brown Act, even as relaxed by Executive Order." The letter further alleged that the "Brown Act forbids local agencies from requiring that members of the public identify themselves or provide an address as a condition to speaking," but that the Zoom/Google survey format the board had adopted for public participation "requires that members of the public provide login credentials, including a valid email address."

The August 20, 2020 letter purported to "constitute[ ] Ms. Thanawalla's Cease and Desist letter." It advised that the board "has the option to, without admitting violations of the Brown Act,

7

enter into an unconditional commitment to remedy the above violations," and alleged that the "commitment must be in the form set forth in Government Code, section 54960.2, subdivision (c)(1)."

### E. The First Amended Complaint & Summary Judgment

Thanawalla filed the FAC on November 16, 2020.  In it, Thanawalla alleged a single cause of action for declaratory relief based on the following alleged violations of the Brown Act and the Governor's COVID-19 executive orders:

- The district allegedly violated Government Code section 54954.2, subdivision (a)(1) by "failing to post 'an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting . . .' " because the title of agenda item J 4 for the March 5, 2020 meeting was "Second Interim Report" and the description did not include the word "budget" and the agenda item did not include a recommended action.
- The district allegedly violated Government Code section 54954.2, subdivision (a)(2)(A) because the district did not have a "prominent direct link" to the March 5, 2020 agenda on its Web site home page.  (The FAC acknowledges that "subsequent to the public raising the Brown Act violations at the March 5 meeting, the District added a school board agenda link to the District homepage.")
- The district allegedly violated Government Code section 54954.2, subdivision (a)(2)(B) because the March 5, 2020 agenda was not "[r]etrievable, downloadable, indexable,

8

and electronically searchable by commonly used Internet search applications."

- The district allegedly violated Government Code section 54954.2, subdivision (a)(2)(C) because agendas available on the district's Web site were not posted in reverse chronological order. (Again, the FAC acknowledges that the district corrected this in March 2020.)
- The district allegedly violated the Governor's executive orders and Government Code section 54953.3 because "[t]he sole way for the public to participate at a Board meeting [during COVID was] to download Zoom and complete a Google Survey," which the FAC alleged required the participant to "identify themselves by name before being allowed to address the Board." According to the FAC, "[t]he Board needs to institute a telephone access or a non-Zoom method for members of the public to participate in order to comply with the Brown Act, even as relaxed by Executive Order[, presumably because t]he public must be permitted to anonymously address the Board."
- The district allegedly "routinely" violated the Brown Act because it posted supporting materials for agenda items less than 72 hours in advance of meetings.

On August 30, 2021, the district filed a motion for summary judgment. The trial court heard and granted the motion on November 15, 2021.

In its ruling, the trial court concluded that Thanawalla's request to nullify the board's approval of the second interim report pursuant to agenda item J 4 at the March 5, 2020 meeting was moot, as Thanawalla had conceded.

9

The trial court granted summary adjudication as to Thanawalla's allegations under Government Code section 54954.2, subdivisions (a)(2)(A) (link to the board's current agenda on the board's home page), (a)(2)(C) (agendas posted in reverse chronological order), and (a)(2)(B) (text searchable agendas) because based on the evidence before it, the trial court concluded that Thanawalla had not sent the district a cease and desist letter until August 20, 2020, and Government Code section 54960.2 requires that a cease and desist letter must be sent "by postal mail or facsimile transmission" before litigation is initiated.

The trial court concluded that Thanawalla's allegations regarding public access and anonymity of attendees and public participants were moot. The board had provided evidence that Zoom attendees could change their Zoom identifiers to not reveal their true names. The board also produced evidence that a dial-in option had been provided since January 2021. "Because of the introduction of the dial-in option," the trial court concluded, "the public is able to attend the [b]oard's meetings telephonically, which would ensure their anonymity. [Thanawalla] has failed to present any evidence to suggests that this option will not be offered in the future."

Finally, the trial court concluded that the agenda for the March 5, 2020 board meeting substantially complied with the Brown Act. The undisputed material facts established that the agenda was posted more than 72 hours before the March 5, 2020 meeting. The agenda, if viewed on a computer, "provided the following summary of the agenda item: 'Recommended Motion: It is recommended that the Board of Education approve the

10

2019-20 Second Interim Report and corresponding budget adjustments.' " And finally, Thanawalla had identified no "legal authority that would require simultaneous postings of the agenda and supporting materials. Supporting materials that are part of the public record and relates [*sic*] to an agenda item may be 'distributed less than 72 hours prior to [the] meeting.' (Government Code[,] § 54957.5.)"

The trial court concluded that Thanawalla's request to nullify approval of the second interim report was moot and there were no triable issues of material fact regarding the remaining alleged Brown Act violations. On that basis, the trial court granted the district's motion for summary judgment. The trial court entered judgment dismissing the FAC on January 7, 2022.

Thanawalla filed a timely notice of appeal.

## DISCUSSION

"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the

11

evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334.)  "[W]e must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. . . .' [Citation.]  Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253.)

"On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court.  [Citation.]  'The fact that we review de novo a grant of summary judgment does not mean that the trial court is a potted plant in that process.'  [Citation.]  '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

Thanawalla does not challenge each of the trial court's conclusions.  Rather, she focuses on two of the trial court's conclusions that she argues relate to four of the board's alleged violations of the Brown Act.  First, she contends that short of going through the unconditional commitment process outlined in the Brown Act, no public entity can ever render a Brown Act lawsuit moot through voluntary remedial action.  Thanawalla

12

argues that this contention relates to the district's past failure to link to current agendas on its Web site home page, the district's past failure to allow for anonymous public speakers at board meetings during COVID-19 (before the board provided a dial-in option in January 2021), and the district's past failure to provide a non-Zoom method to hear the public at board meetings (again, before the board provided a dial-in option in January 2021). Second, Thanawalla argues that the trial court erred when it concluded that the J 4 item on the March 5, 2020 meeting agenda substantially complied with the Brown Act because, Thanawalla contends, "the existence of substantial compliance with the Brown Act is a factual question."

## A. Unconditional Commitment

Thanawalla concedes that the district has instituted remedial measures sufficient to address each of her stated concerns. Specifically, the district has added a link to the most current agenda on its home page and has offered options to address her board meeting attendance and comment allegations.

Initially, we note that the trial court did not conclude that Thanawalla's complaint regarding the district's failure to link its most current agenda to the district's home page was moot. The trial court granted summary adjudication on *that* issue based on Thanawalla's failure to serve a cease and desist letter that complied with Government Code section 54960.2 before initiating litigation. The trial court expressly declined to address other arguments associated with this particular issue. Thanawalla has not challenged this conclusion on appeal. Consequently, we will not reach a contrary conclusion here. (See *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177.)

13

The trial court *did* conclude, however, that the board's remedial measures had rendered Thanawalla's allegations regarding public participation and comment at board meetings moot. " 'A declaratory relief action requires an actual controversy relating to the legal rights and duties of the respective parties.' " (*TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 148 (*Novato*).) "[A] person seeking . . . declaratory relief under the Brown Act for an allegedly illegal past practice of a legislative body [must] show not only compliance with section 54960.2, subdivision (a)(1) but also the existence of a justiciable controversy, meaning one that . . . has not been rendered moot." (*Id.* at p. 149.)

Thanawalla acknowledges that a public entity *can* render a Brown Act lawsuit moot. Thanawalla argues, however, that the *only* way to do that is through the unconditional commitment process outlined in Government Code section 54960.2, subdivision (c). In *Novato*, TransparentGov Novato sent a cease and desist letter to the Novato City Council regarding actions it took at a council meeting. The City of Novato responded with an unconditional commitment as to some of its actions, but then later adopted "an additional remedial measure" outside of the unconditional commitment procedure outlined in Government Code section 54960.2, subdivision (c). (*Novato*, *supra*, 34 Cal.App.5th at p. 145.)

The *Novato* court concluded that TransparentGov's Brown Act claims regarding both the unconditional commitment and its subsequent unilateral remedial measures were moot. In doing so, the court rejected the same argument Thanawalla makes here: "In arguing that the action is not moot,

14

TransparentGov . . . claims that 'a unilateral rule change does not comply with an agency's . . . [required] response to a cease-and-desist demand under § 54960.2.' This argument misses the point. The jurisdictional requirement of an actual, nonmoot controversy in the context of a request for . . . declaratory relief exists separate and apart from the procedural requirements of section 54960.2. True enough, section 54960.2 requires a court to dismiss a claim involving a past action when the public entity makes an unconditional commitment to refrain from repeating the action. But that does not mean that a court must entertain every other claim about a past action even when the circumstances demonstrate that there is no ongoing dispute about it." (*Novato, supra*, 34 Cal.App.5th at p. 150.) The court then went on to reject other arguments TransparentGov made about the mootness of its claim vis-à-vis the City's unilateral remedial measures and concluded that TransparentGov had "not demonstrated a justiciable controversy warranting . . . declaratory relief . . . ." (*Id.* at p. 153.)

The unconditional commitment argument that the *Novato* court rejected is the *only* argument Thanawalla makes regarding whether her claims about public participation and comment were rendered moot by the district's remedial measures. As did the *Novato* court, we also reject the argument.

## B. Substantial Compliance

Thanawalla's remaining argument is that the trial court erred when it concluded that the district had substantially complied with the Brown Act because, according to Thanawalla, "the existence of substantial compliance with the Brown Act is a factual question." (Citing *Hernandez v. Town of Apple Valley* (2017) 7 Cal.App.5th 194, 203 (*Hernandez*).)

Thanawalla's citation to *Hernandez* does not assist her. Her brief cites to the factual and procedural background of that case, and specifically refers to an argument that a party made, and not a proposition of law.  (See *Hernandez, supra*, 7 Cal.App.5th at p. 203.)  Moreover, in *San Diegans for Open Government v. City of Oceanside* (2016) 4 Cal.App.5th 637, 647 (*Oceanside*), the court discussed what constitutes compliance with the Brown Act's agenda requirements, and concluded specifically that "[a]lthough the statute does not itself permit substantial rather than strict compliance with its requirements, substantial compliance is presumed to satisfy the intent of the Legislature:  ' "Unless the intent of a statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test." '  [Citation.]"

"At least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda *containing a brief general description of each item of business to be transacted or discussed at the meeting*, including items to be discussed in closed session.  *A brief general description of an item generally need not exceed 20 words*." (Gov. Code, § 54954.2, subd. (a)(1), italics added.)  "Although there is not a great deal of direct authority with respect to what satisfies the Ralph M. Brown Act's requirement of a 'brief general description' of items to be considered by a local agency, we can discern from the statute itself, cases discussing the statute as well as closely related statutes, and other authority, a general principle that agenda drafters must give the public a fair chance to participate in matters of particular or general concern by providing the public with more than mere clues from which they must then guess or

16

surmise the essential nature of the business to be considered by a local agency." (*Oceanside*, *supra*, 4 Cal.App.5th at p. 643.)

In *Moreno v. City of King* (2005) 127 Cal.App.4th 17, 26-27 the court concluded that an agenda item that stated "Public Employee (employment contract)" was insufficient to signal that "the dismissal of a public employee would be discussed at the meeting." The City in that case could have complied with section 54954.2 with "an agenda that said simply 'Public Employee Dismissal.' " (*Id.* at p. 27.)

In *Hernandez*, an agenda that read "Wal-Mart Initiative Measure" was not compliant to signal that the Town of Apple Valley would consider entering into a memorandum of understanding with Walmart that authorized the acceptance of a gift from Walmart to pay for a special election. (*Hernandez*, *supra*, 7 Cal.App.5th at pp. 197, 208.)

By contrast, in *Oceanside*, "the city met [the Brown Act's] somewhat elastic standard" to notify the public that it would be considering an agreement with a developer to remit to the developer $11 million in transient occupancy taxes from a hotel the developer agreed to build with an agenda that "stated that the council would consider: the developer's agreement to guarantee development of the subject property as 'a full service resort'; an agreement 'to provide a mechanism to share Transient Occupancy Tax (TOT) generated by the Project'; and a report, required by statute 'documenting the amount of subsidy provided to the developer, the proposed start and end date of the subsidy, [and] the public purpose of the subsidy.' " (*Oceanside*, *supra*, 4 Cal.App.5th at pp. 640-641, 645.)

Here, Thanawalla's argument centers on her contention that the agenda description for item J 4 for the March 5, 2020

17

meeting "did not contain the word 'budget' and yet the Board at that meeting voted on a budget." "The absence of the word 'budget' is material, relevant, and not abandoned," Thanawalla contends.

There are two significant problems with Thanawalla's argument.

First, the agenda description *did* include the word "budget." The agenda that the district posted online on February 28, 2020—more than 72 hours before the board's March 5, 2020 meeting—included agenda item J 4: "4. TIME CERTAIN 7 p.m. –Approval of the 2019-20 Second Interim Report (60 min.)" and a detailed summary of the agenda item that stated: "It is recommended that the Board of Education approve the 2019-20 Second Interim Report and the corresponding budget adjustments."

Second, although the "second interim report" was about the *status* of the district's budget, it was *not a budget*. Thanawalla's contention that the district voted on a budget is factually incorrect. What the board actually voted on was a report that the Education Code required the district's superintendent to give to the district's governing board, and a certification that the Education Code required of the district's governing board. (See Ed. Code, §§ 42130, 42131.)

The district contends, and we agree, that Thanawalla's argument represents a fundamental misunderstanding of what the "second interim report" was. Education Code section 42130 provides that "[t]he superintendent of each school district shall, in addition to any other powers and duties granted or imposed upon him or her, *submit two reports to the governing board of the district during each fiscal year*. The first report shall cover the

18

financial and budgetary status of the district for the period ending October 31. *The second report shall cover the period ending January 31. Both reports shall be approved by the district governing board no later than 45 days after the close of the period being reported.*" (Ed. Code, § 42130, italics added.) "Pursuant to the reports required by Section 42130, the governing board of each school district shall certify, in writing, within 45 days after the close of the period being reported, whether the school district is able to meet its financial obligations for the remainder of the fiscal year and, based on current forecasts, for the subsequent two fiscal years. . . . These certifications shall be based upon the financial and budgetary reports required by Section 42130 but may include additional financial information known by the governing board of the school district to exist at the time of each certification." (Ed. Code, § 42131.)

And while it is clear that Thanawalla misunderstood what the second interim report was, Thanawalla's misunderstanding does not mean that the district was required to be more descriptive in its agenda description. Indeed, the district *did* include the very word that Thanawalla contends would have put her on notice that the district was "vot[ing] on a budget."

Thanawalla's real argument appears to be that because she did not see the language when she accessed the agenda on her cell phone, that the district was required to do something more than what it did to ensure that she specifically was able to see the information on her particular device. However, as the trial court pointed out in its order granting the motion for summary judgment, Thanawalla made "no statement as to whether she attempted to access the . . . agenda on a computer. Thus, even though there may have been technical issues with the mobile

19

phone format, the [trial court found] that the [b]oard acted with substantial compliance when it posted the March 5, 2020 meeting's agenda." We agree.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.