Filed 7/29/25  P. v. Kennedy CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B339413 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA468310 |
| DARIUS KENNEDY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Darius Kennedy pleaded no contest to a violation of Penal Code section 273.5, subdivision (a), inflicting injury on D.C., his cohabitant and the mother of his son. At sentencing, the trial court issued a ten year protective order in favor of D.C. and Kennedy's son. Kennedy requested a modification of the protective order to remove his son. The trial court denied the request. Because Kennedy has not provided an adequate record to allow us to evaluate his claims on appeal, we affirm.

Kennedy lived with D.C. and their son. During a dispute, Kennedy punched D.C. in the face. D.C. ran to the kitchen and grabbed a frying pan and hit Kennedy on the forehead with it. Kennedy then grabbed a frying pan and a knife and chased D.C. as she tried to leave the home. Kennedy struck D.C. with the pan several times all over her body and stabbed her with the knife in the back of her head and arm. D.C. finally managed to leave the home and fled. Kennedy chased her, but two men saw and stopped him. D.C. had cuts to the back of her head, ear, and eyebrow. She had blood in her eyes and "blacked out" shortly after fleeing.

Police officers responded to the area and conducted a search. Officers stopped Kennedy as he tried to drive away with his son in the car. Officers discovered four prior reports for cohabitant abuse, domestic battery, and criminal threats. A protective order had previously been issued in favor of D.C., but had expired a few years earlier. Officers found two handguns in Kennedy's home.

An information charged Kennedy with attempted willful, deliberate and premeditated murder, assault with a deadly weapon, and injuring a spouse, cohabitant, fiancé, boyfriend, girlfriend, or child's parent in violation of section 273.5,

2

subdivision (a) as to D.C., and cruelty to a child by endangering health as to Kennedy's son.  The information alleged Kennedy personally used a deadly weapon and personally inflicted great bodily injury in all but the child cruelty charges.

Because D.C. was uncooperative and refused to testify, the prosecutor offered a plea deal, which Kennedy accepted. Kennedy pleaded no contest to the violation of section 273.5, subdivision (a) and admitted the great bodily injury allegation. In accordance with the parties' deal, the court sentenced Kennedy to three years in state prison.  At the sentencing hearing, the court stated that there was a ten year criminal protective order in favor of D.C. and Kennedy's son.  The court asked if the defense had any objection, and defense counsel said he did not.  The record reflects that the court served the protective order on Kennedy in court during the sentencing hearing.

About two years later, Kennedy requested a modification of the protective order to remove his son from the order.  Kennedy argued that because his son was not involved in the incident, it was improper to include him in the order.  D.C. appeared and testified in support of the modification, telling the court she would like Kennedy to be able to help with childcare.  Kennedy's counsel clarified that they were not asking the order to be modified as to D.C.  The prosecutor argued that the severity of the crime warranted keeping the protective order in place as did Kennedy's failure to take any domestic violence or other rehabilitative classes.  The prosecutor further cautioned against accepting D.C.'s evaluation of her safety in regard to Kennedy given her refusal to participate in the previous proceeding.  The trial court denied the modification.

Kennedy appeals, arguing it is improper for the protective order to cover his son since he was not a victim of the section 273.5 violation.  He cites cases about protective orders issued under the Welfare and Institutions Code to support his argument.

Absent from the record is any indication of under what authority the trial court issued the protective order.  Kennedy neglected to include a copy of the order.  He argues this is irrelevant, especially because the order was a standard court form.

This argument is incorrect.  The statutory basis on which the trial court relied determines the bounds of the court's authority and the standards for our evaluation.  The form Kennedy references includes at least four statutory bases on which the court can issue the order.  (*People v. Fuentes* (2023) 87 Cal.App.5th 1286, 1297 [noting the multiple statutory bases included on the Judicial Council protective order form].)  Certain of the statutes are generally held not to allow application of the protective order to a person other than the direct victim.  (See, e.g., *People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 213 [finding a protective order under section 273.5 cannot be extended to a child of the victim].)  Others can sometimes extend to a child of the victim under certain circumstances.  (See, e.g., *People v. Race* (2017) 18 Cal.App.5th 211, 219–220 [protective order issued under section 136.2, subdivision (i)(1) properly applied to a child where child was involved in domestic violence incident even where child not included in charges].)  Without a copy of the order, we cannot properly evaluate Kennedy's claim.  Kennedy has not met his burden to provide an adequate record to allow us to evaluate his claim.  (*Barak v. Quisenberry*

4

*Law Firm* (2006) 135 Cal.App.4th 654, 660 [issue must be resolved against appellant where appellant fails to provide adequate record].)

 We likewise affirm under the presumption of correctness. (*Moreno v. City of King* (2005) 127 Cal.App.4th 17, 30 [we presume an order is correct, indulge all presumptions in its favor on matters on which the record is silent, and require error be affirmatively shown].)  Because the trial court issued the protective order to both D.C. and Kennedy's son, we assume the court made the requisite factual findings to do so under the applicable statute.

## DISPOSITION

 We affirm.

                                          WILEY, J.

We concur:



         STRATTON, P. J.



         RUBIN, J.*

---

*Retired Presiding Justice of the Court of Appeal, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

5